## REYNOLDS v. McMURRAY.
### No. 1122.

Circuit Court of Appeals, Tenth Circuit.

May 13, 1935.

F. W. Dewart, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen., and Carl L. Sackett, U. S. Atty., of Cheyenne, Wyo., on the brief), for appellant.

A. W. McCollough, of Laramie, Wyo. (N. E. Corthell and M. E. Corthell, both of Laramie, Wyo., on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and VAUGHT, District Judge.

VAUGHT, District Judge.

This action was brought to recover alleged overpayments of income taxes, with interest, for the years 1920, 1922, and 1924. Trial by jury was waived and the cause tried to the court. Judgment was entered in favor of the taxpayer, and an appeal followed. This court, in Reynolds v. McMurray (C. C. A. 10) 60 F.(2d) 843, 845, reversed the judgment and remanded the cause for a new trial. The court there said:

"We therefore conclude that the method used by the Commissioner in arriving at the tax liability was correct. We do not however undertake to pass on the correctness of the items. The issues as to them will have to be determined by the trial court."

In the second trial, the taxpayer disputed the correctness of the deduction allowed by the Commissioner for Will McMurray's share of operating expense expended under the blanket agreement for the year 1920.

The Commissioner objected to the consideration of this deduction for the reason that the claim for refund filed with the Commissioner did not set out such deduction as a ground for refund. The Commissioner also contested the deduction on its merits. The trial court found that the claim for refund was broad enough to cover the claimed deduction, and found that such deduction from 1920 gross income should be $86,344.45, instead of $28,375.36, allowed by the Commissioner. Judgment was thereupon entered in favor of the taxpayer for $35,607.55, representing an overpayment of income tax for the year 1920.

This appeal is from such judgment, and involves two questions: (1) Is the claim for refund filed with the Commissioner sufficient to authorize a recovery in this action of 1920 taxes on the ground that an inadequate deduction for expenses was allowed? and (2) Is the taxpayer entitled to a deduction for 1920 of $86,344.45 as expenses paid under the so-called blanket agreement?

The facts are as follows: On December 7, 1917, W. M. Armstrong and the Ohio

Oil Company owned oil leases on certain lands in Wyoming in the proportion of 40 per cent. and 60 per cent., respectively. On that date they entered into agreements with respect thereto, which provided that the Ohio Company should manage, control, develop, and operate such leases, and should immediately drill a well thereon at its own expense; that after the completion of the first well the Ohio Company should continue to manage, control, develop, and operate the leases and pay all costs incident thereto, and should charge Armstrong's undivided interest with its proportionate part thereof; that it should market the oil and gas produced and account to Armstrong for his proportionate part thereof; that it should be reimbursed by Armstrong from the proceeds derived from the sale of his proportionate part of the oil and gas, to be effected by crediting Armstrong's account on the first of each month, with the proceeds derived from the sale during the preceding month of his proportionate part of the oil and gas; and that it should make monthly remittances to him of his proportionate share of any proceeds remaining after deducting the amounts due it for expenditures made by it for him.

On December 21, 1917, Armstrong assigned an undivided portion of his interest in the leases to Will McMurray. Thereafter the Ohio Company carried an account on its books, in accordance with such agreements, covering Will McMurray's share in the expense of the development and operation of such leases and the revenue therefrom.

In accordance with the provisions of the blanket agreement, the Ohio Company made capital and ordinary expenditures, and charged McMurray with his proportionate share thereof. It marketed the oil and gas produced, and gave McMurray credit for his proportionate share. The leases under the blanket agreement did not pay out until April 1, 1924, so that up to that time McMurray's account was always in the red.

A summary of the expenditures and earnings for farms under the blanket agreement follows:

| | Expenditures | | Earnings |
| | Capital | Ordinary | |
|------|-----------|-----------|------------|
| 1918 | $ 9,722.05 | $ 188.73 | $ 341.92 |
| 1919 | 55,922.34 | 3,164.95 | 12,026.32 |
| 1920 | 56,924.38 | 86,344.45 | 119,146.35 |

McMurray, in his income tax return for 1920, did not report any part of the $119,-146.35 as income. Later, the Commissioner determined that even though McMurray had not actually received $119,146.35, or any part of it, he constructively received such amount and it was taxable income to him. An additional assessment was proposed, the $119,146.35 being included as income with allowances for depletion and depreciation, and an allowance of $28,375.-36, for ordinary expense. It is evident from the fact that the Commissioner allowed only $28,375.36 instead of $86,344.45 as ordinary expense that he considered the earnings as income to McMurray in the year that they were credited to his account, but did not consider the expenses incurred by the Ohio Oil Company for McMurray as allowable deductions, and incurred by him until the earning credits paid for such expenses.

At the first trial the facts, with respect to the additional assessment for 1920, were stipulated, that is, the amount of the assessment, the income upon which it was computed, the depletion and depreciation allowance, and the ordinary expense allowance. However, it was not stipulated that any of the computations were correct. It was also stipulated that a claim for refund was filed. McMurray also introduced evidence showing the credits and debits to McMurray by the Ohio Company. One exhibit shows a debit on the books of the Ohio Company against McMurray for ordinary expense of $86,344.45 for 1920 under the blanket agreement.

On the first trial the lower court held that the income credited to McMurray for 1920 under the blanket agreement was not income to him, and therefore the question of whether proper allowances were made was not passed upon.

The question presented on the first appeal (Reynolds v. McMurray, supra) was whether that portion of McMurray's share of the receipts from such leases applied to reimburse the Ohio Company for expense of development and operation, less proper deductions, was income to McMurray for that year and therefore subject to the tax. This court held that under the agreement, Armstrong, McMurray, and the Ohio Oil Company were co-owners of the leases and joint adventurers in the operation of such leases, and the income produced therefrom was the income of all. It also said that

"while the obligations of Armstrong and Will McMurray, as his assignee, to reimburse the Ohio Company were contingent and limited to payment from a particular source, they became certain and fixed to the extent of the full amounts charged against them when the receipts from the leases equaled the expenses incurred by the Ohio Company."

At the second trial, the issue was the amount of allowable deductions. McMurray contended that he was entitled to a deduction of $86,344.45 for ordinary expenses, instead of $28,375.36, the amount allowed by the Commissioner. Evidence was introduced to show that the above amount was expended in 1920 by the Ohio Company as McMurray's share of ordinary expense. The Commissioner's allowance is based upon that part of the expense incurred for McMurray, which was repaid to the Ohio Company by the income credit.

■ It seems clear to us that McMurray's contention that he paid $86,344.45 as ordinary expenses is amply sustained. McMurray kept no books of account, and after his death on February 3, 1925, the accounts as kept by the Ohio Oil Company were the only source from which the necessary information could be obtained. Both the Commissioner and the sole heir of McMurray relied thereon. Mr. Billstone, who had been with the Ohio Oil Company for many years and who was its treasurer at the time his deposition was taken, was familiar with the original contract between the Ohio Oil Company and Armstrong. He directed how the accounts should be kept between the Ohio Company and Armstrong and McMurray. He testified that it was necessary that he understand that contract for that purpose, and that the leases under the so-called blanket agreement did not pay out until April, 1924, that that was the first time that McMurray's credits became equal to his debits on the company's books. Prior to that time, the debits were always in excess of the credits. At the end of each month the account showed the total debits and credits, and at the end of each year those monthly items were consolidated. For the year 1920 the account with McMurray disclosed the following capital expenditures: Leasehold, $389.14; physical property, $18,755.17; development cost, $37,780.07; total $56,924.38; expenses, $86,344.45; total expenditures, $143,268.83; total earnings, $119,146.35. Thus it appeared that the debits against McMurray's interest for that year exceeded his credits by more than $24,000. Mr. Billstone testified that items which made up the $86,000 debit against McMurray consisted of oil expense, labor of pumpers, repairs to wells, surface equipment on the wells, labor, repairs, food, etc., in the service department of the company in connection with the operation of camps, labor, repairs, trucks, teams, automobiles, cleaning out tools, labor and repairs in connection with the machine shops, blacksmith shops, employees' liability tax, ad valorem taxes, interest on previous balances against McMurray, warehouse expenses, labor and repairs to warehouses, which cover storage of pipe and all materials in connection with the operation of the property. The court below found that the whole amount of the item should have been deducted by the Commissioner instead of the $28,375.36, which he allowed. As stated above, we think the evidence supports that conclusion.

If, therefore, the question of the claimed deduction of $86,344.45 for ordinary expense is properly before this court, it must be allowed in full, since to do otherwise would be inconsistent with the opinion in the first appeal, which is the law of the case. Armstrong, McMurray, and the Ohio Company were co-owners of the leases and joint adventurers in their operation. The income produced was the income of all, and the expense incurred, even though contingent, was the expense of all.

The expenditures made by the Ohio Company in the management, development, and operation of the leases were incurred in behalf of all the co-owners. It advanced Armstrong's and McMurray's shares. Such advances were in the nature of loans, in consideration of which the Ohio Company was given the management and control of the leases and of the development and operation thereof, and the right to repayment with interest in the future from the proceeds of Armstrong's and McMurray's shares of the oil.

The Ohio Company in its income tax return for the years in question could not have properly deducted from its gross income the amounts advanced for Armstrong and McMurray. It advanced funds to which it had a right of repayment. It did not incur expenses; they were incurred by Armstrong and McMurray. It might in the event of failure of repayment deduct the amount thereof later as a bad debt.

It follows that McMurray was entitled to deduct in his 1920 return as ordinary expenses the sum of $86,344.45 advanced and expended in his behalf by the Ohio Company.

██ However, the Commissioner contends that even if the entire deduction is allowable, it cannot be asserted in this suit for the reason that the claim for refund did not cover such deduction.

The Revenue Act of 1926, c. 27, 44 Stat. 9, 116, in part provides:

"Sec. 1113. (a) Section 3226 of the Revised Statutes, as amended, is reenacted without change, as follows:

" 'Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail.' " (26 USCA § 156.)

Treasury Regulations 69, promulgated in pursuance thereof are:

"Art. 1304. Claims for refund by taxpayers.—Claims by the taxpayer for the refunding of taxes, interest, penalties, and additions to tax erroneously or illegally collected shall be made on Form 843. All facts relied upon in support of the claim should be clearly set forth in detail under oath. * * *"

At the first trial it was stipulated that a claim for refund was filed, and the Com-

missioner introduced such claim in evidence at the second trial. The claim provides:

1. The transactions upon which the assessment is based do not show or establish any income on the part of the taxpayer.

2. The credits in the account of operations of the Ohio Oil Company, on which the assessment is based, do not constitute taxable income of the estate of decedent.

These grounds for refund set out in the formal claim were supported by a short statement of the nature of the arrangement under the blanket agreement, and a copy of such agreement.

It has been repeatedly held the filing of a claim for refund, with the grounds stated therein, is a condition precedent to suit. Lion Coal Co. v. Anderson (C. C. A. 10) 62 F.(2d) 325, and cases there cited. However, we are of the opinion that grounds 1 and 2 are sufficient to cover the claimed deduction and therefore the condition is satisfied. The claim is that the transactions under the blanket agreement and upon which the assessment is based do not establish any income, or the credits do not constitute taxable income. The last part, or the ground set out as No. 2, attacks the action of the Commissioner in holding the income credits were taxable and the first part, or No. 1, covers both income and deductions. The first ground, although general in its nature, necessarily includes income less deductions, under the blanket agreement. It is sufficient.

██ However, assuming that the claim was not sufficiently specific, the Commissioner may waive any objection to the sufficiency of the claim. In Tucker v. Alexander, 275 U. S. 228, at page 231, 48 S. Ct. 45, 46, 72 L. Ed. 253, the court said:

"Literal compliance with statutory requirements that a claim or appeal be filed with the Commissioner before suit is brought for a tax refund may be insisted upon by the defendant, whether the collector or the United States. * * * But no case appears to have held that such objections as that urged here may not be dispensed with by stipulation in open court on the trial. The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily pre-

clude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitations. If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings. We can perceive no valid reason why the requirements of the regulations may not be waived for that purpose."

U. S. v. Henry Prentiss & Co., 288 U. S. 73, 53 S. Ct. 283, 77 L. Ed. 626, and U. S. v. Factors & Finance Co., 288 U. S. 89, 53 S. Ct. 287, 77 L. Ed. 633, are not helpful, since they involve the question of whether a defective claim can be amended before rejection by the Commissioner. U. S. v. Memphis Cotton Oil Co., 288 U. S. 62, 53 S. Ct. 278, 77 L. Ed. 619, also supports the proposition that the Commissioner may waive the objection that supporting facts or reasons have not been stated in the claim. The court, 288 U. S. 62, at page 71, 53 S. Ct. 278, 281, 77 L. Ed. 619, said:

"The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research."

In this case the tax involved is based upon income arising out of the transactions under the blanket agreement. It was stipulated in the first trial that a claim for refund had been filed. Evidence was introduced concerning the transactions involved under the blanket agreement, including the amount expended by the Ohio Company in 1920 on behalf of McMurray. The trial court held that the income credited to McMurray's account was not income to him, and for that reason did not have to decide on any question relative to deductions. The reversal of the trial court's decision on the income feature necessarily required a consideration of the other features of the case in the second trial. The objection to the form of the claim, therefore, being pre-sented for the first time at the second trial was too late. Such objection had already been waived.

The judgment of the District Court is therefore affirmed.