UNITED STATES of America,
Appellant,

v.

UTCO PRODUCTS, Inc., a Utah corporation, Appellee.
No. 5823.

United States Court of Appeals
Tenth Circuit.
June 10, 1958.

Sheldon I. Fink, Atty., Dept. of Justice (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., and A. Pratt Kesler, U. S. Atty., Salt Lake City, Utah, were with him on the brief), for appellant.

Hardin A. Whitney, Jr., Salt Lake City, Utah (Oscar W. Moyle, Jr., Salt Lake City, Utah, was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

Utco Products, Inc.,[1] a Utah corporation, brought an action in the United States District Court for the District of Utah, under 28 U.S.C.A. § 1346, against the United States seeking a refund of income taxes paid for the years 1951, 1952 and 1953, with interest.

During those years the taxpayer was engaged in the mining and processing of perlite. It mined perlite from its deposit located near Milford, Utah, and shipped it to its plant at Salt Lake City, Utah, for processsing. At the processing plant the raw perlite was run through preliminary and secondary crushers which reduced the raw perlite to the. size of sand. The crushed perlite was introduced into a rotary kiln where it was expanded, by heating, approximately 10 times its crushed size. The expanded perlite was placed in bins, bagged and distributed through lumber yards and other retailers of building equipment. Expanded perlite is used as an aggregate to be mixed with plaster or cement. It can also be used as a soil aerator and a filter aid.

Because of its softness and lack of cohesiveness the taxpayer's expanded raw perlite is not commercially marketable in bulk. It is only commercially marketable when it has been bagged. The trial court concluded that bagging the perlite was an ordinary treatment process applied to obtain the commercially marketable mineral and held that the taxpayer was entitled to a refund of taxes for 1951 in the amount of $1,134.-62, for 1952 in the amount of $1,340.29, and for 1953 in the amount of $162.39, plus interest on such amounts. The amount of the taxpayer's refund was computed by including in the gross income from the perlite the full amount received on the taxpayer's sales of bagged perlite, including income attributable to the bagging and to the bags in which the perlite was sold.

The question presented on this appeal is whether in computing its percentage depletion allowance under § 23(m) and § 114(b) (4) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. §§ 23(m), 114(b) (4), the taxpayer was entitled to include in its gross income from the property, income attributable to the bagging of the expanded perlite and to the bags in which it was sold.

Section 23 of the Internal Revenue Code of 1939, as amended, in part provides:

---

1. Hereinafter called the taxpayer.

"*Deductions from gross income.* In computing net income there shall be allowed as deductions:

\*   \*   \*   \*   \*   \*

"*(m) Depletion.* In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; \* \* \*"

Section 114 of the Internal Revenue Code of 1939, as amended, in part provides:

"*Basis for depreciation and depletion*

\*   \*   \*   \*   \*   \*

"(b) *Basis for depletion*

\*   \*   \*   \*   \*   \*

"(4) *Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits*

"*(A) In general.* The allowance for depletion under section 23(m) in the case of the following mines and other natural deposit shall be—

\*   \*   \*   \*   \*   \*

"(ii) in the case of \* \* \* perlite, \* \* \* 10 per centum,

\*   \*   \*   \*   \*   \*

"of the gross income from the property during the taxable year \* \* \*

"*(B) Definition of gross income from property.* As used in this paragraph the term 'gross income from the property' means the gross income from mining. The term 'mining' as used herein shall be considered to include not merely the extraction of the ores or minerals from the ground but also the *ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products,* \* \* \*. The term 'ordinary treatment processes', as used herein, shall include the following: \* \* \* (iv) in the case of \* \* \* ores which are not customarily sold in the form of the crude mineral product—crushing, grinding, and beneficiation by concentration (gravity, flotation, amalgamation, electrostatic, or magnetic), cyanidation, leaching, crystallization, precipitation, \* \* \*" (Emphasis added.)

■ Depletion allowance is granted as a matter of legislative grace to compensate for exhaustion of a mineral asset resulting from production.[2]

■ Statutory provisions for deductions from income are strictly construed and the taxpayer must bring himself clearly within the statutory provisions.[3]

■ This Court has recently construed the above statute, in United States v. Sapulpa Brick and Tile Corp., 10 Cir., 239 F.2d 694, 697, wherein we said: "The applicable statutory language is clear and unambiguous. It clearly means that gross income from mining includes the income from *treatment processes,* which must normally be applied to the mineral to obtain 'the commercially marketable mineral product or products,' that is, to obtain the first product which is commercially marketable. \* \* \*" (Emphasis added.)

It must be conceded that the expanded raw perlite is not commercially marketable until it has been bagged. But the precise question presented is whether placing the material in bags is an ordinary treatment process normally applied by mine owners or operators.

2. Helvering v. Bankline Oil Co., 303 U.S. 362, 366, 58 S.Ct. 616, 82 L.Ed. 897; Ryan v. Alexander, 10 Cir., 118 F.2d 744, 749.

3. F. A. Gillespie & Sons Co. v. Commissioner of Internal Revenue, 10 Cir., 154 F.2d 913, 917; Equitable Life Assurance Society, of United States v. Commissioner, 321 U.S. 560, 564, 64 S.Ct. 722, 88 L.Ed. 927; Okemah National Bank v. Wiseman, 10 Cir., 253 F.2d 223, 225; Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172.

■ We are of the opinion that the phrase "ordinary treatment process," except where the statute otherwise provides, means a process of treating which separates the mineral from other minerals in which it is found or with which it is associated, or which effects a chemical or physical change in the mineral itself, such as crushing, separating, removing impurities, pulverizing, hardening and the like.

When the perlite has been expanded it requires no further change, either physical or chemical in the mineral itself or any separation from other matter to render it marketable. Clearly, placing the material in bags effects no change in the mineral itself and is not an ordinary separation process. .

It is significant that the statute, in dealing with certain minerals: Coal, sulphur, iron ore, bauxite, ball and sagger clay, rock asphalt and minerals which are customarily sold in the form of the crude mineral product, includes in the term "mining" loading for shipment, but makes no such provision with respect to perlite or for the placing of the perlite in containers for shipment or marketing.

Expanded perlite is not a crude mineral. Rather, it is a refined product.

We are of the opinion that ordinary treatment processes of the perlite to obtain a commercially marketable product were completed when the perlite reached an expanded form.

■ Accordingly, we conclude that the bagging of the material is not an ordinary treatment process normally applied by mine owners or operators and not included in the term "mining," and that income attributable to the bagging and the cost of the bags is not gross income from the property.

So far as Townsend v. Hitchcock Corp., 4 Cir., 232 F.2d 444 and New Idria Quicksilver Mining Co. v. Commissioner, 9 Cir., 144 F.2d 918 may be to the contrary, we are not in accord with the conclusions there reached.

Counsel for the Government in their brief and in oral argument indicated they would not insist on exclusion from gross income that part of the income received attributable to the bagging, but only that portion attributable to the cost of the bags. Accordingly, the judgment is reversed and the cause remanded, with instructions to exclude from gross income in the years in question the cost of the bags and to compute the refunds accordingly.