COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

AMERICAN GILSONITE COMPANY, Respondent.

AMERICAN GILSONITE COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 5843, 5844.

United States Court of Appeals Tenth Circuit.

Sept. 25, 1958.

Marvin W. Weinstein, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Joseph F. Goet, ten, Harry Baum, Sheldon I. Fink and Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., were with him on the briefs), for Commissioner of Internal Revenue.

Elliott Lee Pratt, Salt Lake City, Utah, for American Gilsonite Co.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

This matter is before us on a petition of the Commissioner of Internal Revenue and the cross-petition of American Gilsonite Company [1] to review a decision of the Tax Court. Income tax deficiencies for the years 1948, 1950 and 1951 are involved.

During such tax years the taxpayer was principally engaged in the mining of gilsonite, a hydrocarbon substance, from vertical veins averaging 20 feet in width and up to 1,000 feet in depth. The taxpayer's mines are located near Bonanza, Utah, approximately 50 miles southwest of Vernal, Utah.

Gilsonite is mined by a blasting operation at the face of the ore as it lies in the vein. The blasting breaks the ore into chunks of various sizes. With it there is intermingled rock and other foreign matter. The ore is taken from the mine to a cleaning plant, where the rock and other foreign matter is removed by a washing and air blowing process. The cleaned ore is put through a crusher

1. Hereinafter called the taxpayer.

and is then passed through screens which separate it into three sizes: (1) fine, (2) select, and (3) pulverized. Approximately 10 per cent of it is pulverized. Each size of gilsonite is stored in separate tight bins. From the processing plant at Bonanza the gilsonite is transported to Craig, Colorado, by trucks especially designed to keep it dry and dirt free. Craig is the nearest railhead to Bonanza which is available as a shipping point. At Craig the ore is hoisted from the truck into a closed hoist and is placed into closed hoppers. From the hoppers it descends into the packing machines, whereby it is packed in bags of 100 pound capacity. The filled bags are closed and placed upon a conveyer, which transports them directly into the railroad car and they are then transported by rail to the purchasing customer.

Gilsonite is used in the manufacture of paints, varnishes, inks, asphalt tile, storage batteries, pipe insulation and other similar products. To meet the demands of customers, gilsonite must be made available in different sizes and each size must be approximately uniform. Handling, especially of the larger sizes, tends to break them down into smaller particles. Bagging tends to prevent gilsonite from thus breaking down. Commercial gilsonite must be kept in a pure state, free from dust, dirt, or other foreign matter. Bagging gilsonite protects it from impurities. Pulverized gilsonite, or gilsonite dust, is highly volatile and it is safer to handle when contained in bags. Purchasers of gilsonite desire it to be packed in 100-pound bags. Bagging of gilsonite is necessary in order to preserve its freedom from impurities, to preserve its uniform size, to render it safer to handle, and to satisfy customers' demands.

The taxpayer owns property known as "The Bonanza Townsite," consisting of approximately 50 houses, a school, a theater, and recreation and mess halls, which it rents. Such rental structures were built by the taxpayer in 1938. At that time the townsite was connected with Vernal by a dirt road and the driving time between the two points was about four hours. During the tax years here involved the townsite and Vernal were connected by a black top road and the driving time was approximately one hour. About 40 per cent of the taxpayer's employees live at the townsite. Whenever such houses are available the taxpayer's employees take advantage of the opportunity to live in them. All the houses were fully occupied by the taxpayer's employees during the tax years here involved. The townsite was not originally undertaken as a profit venture, but was operated and maintained by the taxpayer with a view of attracting a labor supply for its mining operation at Bonanza. The rate of rental for the houses was $2.50 per room per month, which was substantially less than a normal rental.

During the tax years here involved the taxpayer sustained losses in connection with the operation of the townsite, as follows: 1948—$23,696.67; 1949—$26,-214.09; 1950—$28,320.84; 1951—$23,-304.09.

The Tax Court decided that in computing the percentage depletion allowed by the provisions of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A., 1952 Ed., Sections 23(m) and 114(b) (4), the taxpayer was entitled to include in its gross income from the property income attributable to the bagging of the gilsonite and to the bags in which it was sold. The Commissioner challenges that portion of the decision.

The Tax Court decided that the taxpayer was not entitled to include in its income from the property for the purpose of computing depletion for the year 1950 the cost of transporting the refined gilsonite for 50 miles of the distance between the point of extraction and the bagging and loading plant at Craig, Colorado. The Tax Court further decided that the losses from the operation of the townsite properties represent an indirect increase in the salaries and wages of the occupants of such housing properties who were engaged in the taxpayer's production activities, and therefore such losses

must be regarded as direct mining costs in determining the taxpayer's net income from the property for the purpose of applying the limitation of Section 114 (b) (4) (A) of Title 26 U.S.C.A. that the allowance for depletion "shall not exceed 50 per centum of the net income of the taxpayer (computed with the allowance for depletion) from the property, * * * ." The taxpayer by its petition for review challenges the decision of the Tax Court with respect to the two matters last mentioned.

"Refine" is defined as follows in Webster's New International Dictionary, Second Edition: "To reduce to a fine, unmixed, or pure state; to separate from extraneous matter; * * * to free or cleanse from impurities, * * * ."

From the undisputed facts it seems clear to us that gilsonite, when it has been cleaned, separated from material associated with it in its environment and freed of impurities and when it has been crushed and separated into the three sizes; fine, select and pulverized, is a refined mineral product. In that state it is combined with other products in the manufacturing process in which it is utilized. It is not "customarily sold in the form of a crude mineral product."

■ With respect to the question whether the income attributable to the bags and the bagging was gross income from the property, we are of the opinion that the instant case is indistinguishable from United States v. Utco Products, Inc., 10 Cir., 257 F.2d 65. We accordingly conclude, on authority of that case, that the Tax Court erred in including the income attributable to the bagging and the bags in the gross income from the property in computing depletion allowance.

Section 114(b) (4) (B) of the Internal Revenue Code of 1939, as amended by Section 207 of the Revenue Act of 1950, effective December 31, 1949, provides that "The term 'mining' as used herein shall be considered to include * * * so much of the transportation of ores or minerals (whether or not by common carrier) from the point of extraction from the ground to the plants or mills in which the ordinary treatment processes are applied thereto as is not in excess of 50 miles unless the Secretary finds that the physical and other requirements are such that the ore or mineral must be transported a greater distance to such plants or mills."

■ Since there were no ordinary treatment processes applied at the bagging plant at Craig, the Tax Court did not err in holding the transportation was not includible in gross income from mining, even though it gave another reason for its holding.

■ Since the taxpayer, by ordinary treatment processes, reduces the gilsonite to a refined mineral product and since gilsonite is not customarily sold in the form of a crude mineral product, "loading for shipment" is not an ordinary treatment process. See United States v. Utco Products, Inc., supra, 257 F.2d 65, 68. Therefore, income attributable to loading the bagged gilsonite should not be included in gross income from the property for the purpose of computing depletion allowance.

■ The Commissioner and the Tax Court found that losses incident to the operation of the Bonanza Townsite represented an indirect increase in salaries and wages paid by the taxpayer to its employees engaged in its production activities and should be regarded as direct mining costs in determining the taxpayer's net income from the property for the purpose of applying the limitation in Section 114(b) (4) (A), supra. Such findings are supported by the evidence and warranted the conclusion reached by the Commissioner and the Tax Court.

The order of the Tax Court is reversed and the cause remanded for further proceedings in accordance with this opinion.