The **WHITEHALL CEMENT MANUFAC-TURING COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 25310.**

United States District Court
E. D. Pennsylvania.

May 26, 1965.

See also D.C., 242 F.Supp. 327.

George Craven, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff Whitehall Cement Mfg. Co.

John B. Leake, Philadelphia, Pa., for Allentown Portland Cement Co.

Drew J. T. O'Keefe, U. S. Atty., Francis R. Crumlish, Asst. U. S. Atty., Philadelphia, Pa., Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Thomas F. Field, Attys., Dept. of Justice, Washington, D. C., for defendant.

GRIM, District Judge.

Plaintiff in this tax refund case asks the court to grant a reargument on one of the issues resolved against it in the court's opinion filed January 25, 1965.

In that opinion, 237 F.Supp. 838, it was decided that in computing taxpayer's depletion allowance for the mining of cement rock, an allocation had to be made between those costs and profits properly attributable to the mining of cement rock and those properly attributable to the manufacturing of portland cement, the end product marketed by taxpayer. It was determined that in making this allocation the costs of purchasing certain required limestone, iron ore, cinders and sand had to be excluded from taxpayer's "gross income from mining" for purposes of computing its depletion allowance. This exclusion was to be accomplished by means of the so-called proportionate costs and profits method under which, the cost of purchasing these additives plus that proportion of taxpayer's profits allocable to that cost, would be subtracted together with other manufacturing costs and profits from taxpayer's gross income from the sale of portland cement to produce a constructive figure deemed to represent taxpayer's gross income from mining upon which figure the depletion allowance would be computed.

The taxpayer, throughout the case, argued that if the costs and profits attributable to the use of purchased additives were held to be part of its manufacturing operations, then the exclusion

of such items from its gross income should be made, not on the basis of the proportionate costs and profits method outlined above, but on the basis of relative weights or tonnage. I previously rejected this contention but in view of the numerous issues in this case I did not specifically discuss or make a finding in reference to this method of allocating taxpayer's gross income between mining and manufacturing. I do so now. Taxpayer recognizes that the gross income attributable to the purchasing of additives must be excluded from taxpayer's depletion basis but argues that to make this exclusion on the basis of the actual costs of the additives grossly distorts the valuation of the gross income attributable to cement rock at the kiln feed which is includable in taxpayer's depletion basis. Taxpayer argues that the fairest method to make the necessary exclusion of its gross income attributable to the purchasing of additives is by the tonnage method. Under this system, taxpayer would separate its mining income from its manufacturing income in part by applying to its total income figure a fraction of which the weight of the purchased additives would be the numerator and the weight of all materials entering in the composition of portland cement would be the denominator. Taxpayer contends that this method reflects its gross income from mining more fairly than the proportionate costs and profits method because it gives a cost figure to its basic raw material, the cement rock unextracted from its quarries.

It is true that in the computation of the costs and profits to be included in taxpayer's gross income from mining, no actual valuation was given to the cement rock unextracted from taxpayer's quarries. However it must be remembered that the very depletion allowance taxpayer seeks, is intended to compensate it for the loss of its capital asset, the cement rock. Moreover, the actual costs paid by taxpayer to purchase limestone, iron ore, cinders and sand in the years in issue are a known fact in this case. They vary from a price of $1.75 per ton

for sand to $7.00 per ton for iron ore. Yet taxpayer would have the court ignore this reality and give to all materials of equal weight involved in the mining and manufacturing of portland cement the same value. To do so would, in my opinion, distort rather than fairly reflect taxpayer's gross income from mining. See Standard Lime & Cement Co. v. United States, 329 F.2d 939 (Ct. of Claims 1964). Accordingly, the tonnage method of allocating taxpayer's income between mining and manufacturing must be rejected.

### ORDER

And now, this 26th day of May, 1965, the opinion in this case filed January 25, 1965, is amended to add a conclusion of law that in the determination of the amount of taxpayer's income to be deemed derived from the purchase of limestone, sand, iron ore and cinders (as opposed to their use in taxpayer's processing operations) no consideration or relevance shall be given to the relative weights of the minerals and materials involved in the production of portland cement. The motion for reargument is denied.