**UNITED STATES of America,
Appellant,**

v.

**IDEAL BASIC INDUSTRIES, INC.,
Appellee.**

**No. 9571.**

United States Court of Appeals
Tenth Circuit.

Aug. 15, 1968.

Rehearing Denied Jan. 20, 1969.

Lewis, Circuit Judge, dissented.

Grant W. Wiprud, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert Livingston and Thomas L. Stapleton, Attys., Dept. of Justice, Washington, D. C., with him on brief) for appellant.

Claude M. Maer, Jr., Denver, Colo., (Lawrence W. Treece, Denver, Colo., and Pillsbury, Madison & Sutro, San Francisco, Cal., with him on brief), for appellee.

Before MARVIN JONES\*, LEWIS and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Appellee, Ideal Basic Industries, Inc., for itself and its merged affiliate, Pacific Portland Cement Co., sues for refund of income and excess profit taxes paid for the years 1951 through 1954. The trial court granted the refund claimed by appellee. The government appeals. Jurisdiction is conferred by 28 U.S.C. § 1291.

The appeal presents two questions: (1) Are taxpayer's claims for the years 1951, 1952, and 1954 with respect to the Ada, Oklahoma, plant barred by failure to present a claim for refund within the period of limitations? (2) Is the determination of "Gross Income from Mining" properly made under the proportionate profits method of computation when certain costs are introduced into the proportionate fraction?

The specific costs to be considered are:

1. Cost of processing additives.
2. Cost of bags and bagging.
3. Cost of bulk loading.
4. Cost of operating storage warehouses, distribution terminals, and the transportation thereto.
5. Costs of advertising, promoting and selling cement.

The facts are not in dispute. Appellee is an integrated miner-manufacturer. The first market price available is for the finished product, bulk cement, therefore, depletion is computed on the hypothetically derived value of "kiln feed." 26 U.S.C. § 613(c) (4) (F). Appellee made timely election to use the proportionate profits formula to compute its "Gross Income from Mining" which would be subject to depletion.

We consider initially the procedural question relative to the period of limitations provisions.

All refund claims were initially filed on time, and all except the Ada, Oklahoma, claims were based upon the depletion percentage for limestone. In its 1951–53 returns, appellee claimed the calcareous material at Ada was calcium carbonate, depletable at 10%. In its 1954 return, appellee claimed the argillaceous material at Ada was shale, depletable at 5%. Later the appellee amended its 1951–53 claims relating to Ada, Oklahoma, to identify the calcareous material as chemical grade limestone, depletable at 15%. The 1954 claim was amended to identify the argillaceous material as clay, depletable at 15%. The commissioner denied the amended claims for 1951, 1952, and 1954 on the ground they were filed out-of-time. The trial court reversed and allowed the amended claims.

The test applied to determine, "[w]hether a new ground of recovery may be introduced after the statute has run by amending a pending claim filed in time depends upon the facts which an investigation of the original claim would disclose. Where the facts upon which the amendment is based would necessarily have been ascertained by the commissioner in determining the merits of the original claim, the amendment is proper." Pink v. United States, 105 F.2d

\* Senior Judge, United States Court of Claims, sitting by designation.

183, 187 (2d Cir. 1939). (citations omitted). "The test is one which affords the government ample protection against the filing of stale claims * * * while at the same time providing no arbitrary limit on the amendment of claims previously filed." St. Joseph Lead Co. v. United States, 299 F.2d 348, 350 (2d Cir. 1962). (citations omitted).

■ The trial court found the contested mineral identification issues in favor of the taxpayer. When the initial claim was filed it was incumbent upon the commissioner to identify the minerals upon which depletion was claimed. The findings clearly indicated the identity of the minerals as limestone and clay, entitled to the 15% depletion rate. Therefore, the commissioner could not have been misled nor did the amendment introduce a new ground for recovery.

"'If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits.'" Reynolds v. McMurray, 77 F.2d 740, 744 (10th Cir. 1935), quoting Tucker v. Alexander, 275 U.S. 228, 231, 48 S.Ct. 45, 72 L.Ed. 253 (1927).

We now turn to the question which involves the merits of the controversy.

■ This circuit has adopted the proportionate profits method for determining the "Gross Income from Mining" for the purpose of depletion in the miner-manufacturer product, cement. United States v. Portland Cement Co. of Utah, 378 F.2d 91, 93 (10th Cir. 1967).

$$\text{Gross Income from Mining} = \frac{\text{Mining Cost}}{\text{Total cost of [bulk] cement}} \times \text{Sales price of first marketable product, i. e., [bulk] cement.}^{[1]}$$

"This method works back to the end result by reducing the representative market or field price of the taxpayer's first marketable product by his non-mining costs plus the proportionate profits allocable to his non-mining activity. For this purpose profits are allocated between mining and non-mining activities in the proportion that the taxpayer's non-mining costs bear to his total costs." Hamovit, Depletion for the Integrated Miner-Manufacturer, 13 Rocky Mtn. Mineral L. Inst. 411, 422 (1967).

■ The trial court found: "The grinding and blending of pre-kiln additives was incidental to the grinding and

blending of plaintiff's own materials." Ideal Cement Co. v. United States, 263 F.Supp. 594, 601 (D. Colo. 1966). We agree, therefore, we would not deduct the costs from the numerator (mining costs) in the proportionate formula. Other courts have so held. Whitehall Cement Mfg. Co. v. United States, 237 F.Supp. 838 (E. D. Pa.), modified, 242 F.Supp. 326 (E. D. Pa. 1965), *aff'd without discussion of this issue*, 369 F. 2d 468 (3d Cir. 1966); Riddell v. California Portland Cement Co., 330 F.2d 16 (9th Cir. 1964).

■ We conclude that "first marketable product" is the proper sales price to

1. The numerator mining costs, is the cost of the process including applicable overhead up to and including kiln feed. The denominator, total cost of bulk cement, is the cost of the bulk cement, or stated another way, the total cost of mining and non-mining activities including the overhead and administrative cost attributable to mining and non-mining activities. The multiplier, sales price of first marketable product, is the sales price of bulk cement. It may be helpful to note that the sales price of the first marketable product is to be computed on the identical physical material that is represented by total mining and non-mining costs.

which the application of the formula was intended, therefore, the cost of bags, bagging, and bulk loading should be eliminated from all parts in the formula. "Consequently we must hold that those packing and loading costs are indirect costs which are not incurred for the benefit of the entire operation and as such *cannot be included in taxpayer's computation of gross income* from the property at kiln feed." Standard Lime & Cement Co. v. United States, 329 F.2d 939, 948, 165 Ct.Cl. 180 (1964) (emphasis added); accord, United Salt Corp., 40 T.C. 359 (1963). Equally compelling is the simple logic that bulk cement is the first marketable product,[2] bagged cement is the second marketable product, as for example "sakrete"[3] would be a third marketable product.

■■ The cost of operating storage warehouses, distribution terminals, and the transportation thereto are, on their face, non-mining and non-processing costs. The basic principle concerned is to allow a deduction to compensate for the depleting resource and, therefore, the formula is oriented to the value of the resource at the time of its extraction rather than to the ultimate sale price of the manufactured product. Transportation, governed by regulated rates, does not add to or detract from the appellant's profit as computed for bulk cement and is not a proper part of the "Gross Income from Mining" computation. The operation of warehouses and of distribution terminals are marketing facilities for the manufactured product and are, therefore, cost oriented to the value of the manufactured product rather than the value of the depleted resource. Both should be eliminated from the formula to arrive at the gross re-

source income. Standard Lime & Cement Co. v. United States, 329 F.2d 939, 165 Ct.Cl. 180 (1964). See Commissioner of Internal Revenue v. American Gilsonite Co., 259 F.2d 654, 657 (10th Cir. 1958).

■ The advertising, promotional, and selling costs are not a proper part of the computation. These costs, like bagging (packing) and loading costs are overhead charges properly applicable to finished cement after it has become "first marketable product." The selling, advertising, promotional, loading, bagging, and transportation costs are all distribution costs to get the finished cement from the point of completed manufacture to the next user. A hypothetical model to test this point would be the case of a cement block manufacturer with facilities adjacent to the cement plant. If the block manufacturer utilized all of the output of the cement plant, then there would not be any necessity for the cement manufacturer to incur costs of distribution. The cement manufacturer would not incur selling, advertising, promotional, loading, bagging, or transportation expenses. "We are of the opinion that all of taxpayer's * * * costs are distribution expenses which cannot be allocated by taxpayer in its computation of gross income from the property at kiln feed." Standard Lime & Cement Co. v. United States, 329 F.2d 939, 948, 165 Ct.Cl. 180 (1964). The assumption of the proportionate profits formula is that in the absence of a market price for the mined product, i. e. chemical grade limestone, an artificial price for "kiln feed" must be computed. The artificial price is predicated upon a real price which is determined in a hypothetically free market place. The in-

2. Bulk cement is the first marketable product because it *can* be sold. The Supreme Court, in United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed.2d 1581 (1960), held that a sale only needed to be possible. Certainly bulk cement is saleable. Only the details of the manner of loading and whether the buyer or seller bears the

loading costs need be resolved. The fact is that bulk cement is marketable. In addition there is no earlier point in the manufacturing procedure where the "goods in process" can be sold.

3. "Sakrete" is a bagged mixture of cement, sand, and gravel to which water may be added to make concrete.

tent is to establish this real market price as near the mine as possible, therefore, the liturgy of "first marketable product." First marketable product means the cost of bulk cement, and that means the cost of mining plus the cost of processing to the point that the bulk cement is delivered to the silo from the final milling, plus those overhead items which may be fairly attributable to mining and processing. Overhead amounts dealing with sales cannot be logically attributed to mining as the government points out. Likewise, these items of overhead are equally inapplicable to the process from the "kiln feed" point to the silo. The logic of this approach is, the closer to the mine that the mining costs, the cost of bulk cement, and the free market price can be established, the smaller the possibility of distortion of the depletion figure, and the fairer the result for the taxpayer and the government.

The fallacy of the appellee's argument that the teaching of United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed.2d 1581 (1960), is parity among miners is that the hypothetical sales expense of a limestone mine selling to a cement manufacturer is a different fact situation from a cement manufacturer selling to a wide variety of end users. The appellee is seeking hypothetical equality between a miner and an economically distinct entity, a manufacturer. Under *Cannelton* the appellee is, in fact, entitled to include any sales expense he can demonstrate which can be attributed to the cost incurred by his mining operation in selling kiln feed to his processing, or manufacturing operation.

We therefore affirm in part and reverse in part and remand to the trial court for computation in conformance with this opinion.

Remanded.

LEWIS, Circuit Judge (dissenting).

I must dissent for it appears to me that the reasoning of the majority, abandoning as it does both the views of the trial court and the arguments of the parties, reaches a result that is a rejection of the basic theory of the proportionate profit method itself. The method, by relating gross sales proportionately to mining costs and total costs, purports to isolate for tax purposes income from mining from that attributable to non-mining activity. The basic equation

is: $\dfrac{\text{mining costs}}{\text{total costs}} \times \text{gross sales} = \text{gross income from mining.}$

The formula is cost-oriented and assumes the premise that each dollar of cost is reflected proportionately in profit. This premise is, of course, one of convenience and practical necessity but artificial and thus lends itself to easy attack when specific items of cost are allocated to or excluded from the formula. Common sense dictates that if unproductive costs so corrupt the formula as to patently distort the reality of result such costs should be eliminated from the equation. United States v. Portland Cement Co. of Utah, 10 Cir., 378 F.2d 91, 92–93. But elimination of a specific element of cost must be the exception for the proportionate profit method assumes that every item of cost, directly attributable to mining or not, is incurred for the benefit of the integrated business and must therefore be reflected in both cost and gross sales if the equation is to be acceptable.

The trial court held that Ideal's first marketable product was cement, whether sold in bulk or in bags, and allocated the element of bag expense within the cost fraction as a balance to the inclusion of such cost in total sales. Since the actuality of this particular company's selling practice shows that bagging amounts to but a premium charge there may be justification for this view although I would agree with the United States that the cost of bagging, in general, is a non-mining cost. The main opinion, however, rejects the finding that cement is Ideal's first marketable product, finds that bulk cement is such product, and then eliminates the cost of bagging completely from the equation. I would include such cost under either

**128**

finding for certain it is that the quantity of bulk cement sold is increased by bagging and its contribution to gross sales thus actually exceeds the simple premium cost of bags.

As I have indicated, I can see some separate merit to the arguments of the parties that the cost of bagging should be included only in the denominator of the subject fraction (as argued by the United States), allocated between the numerator and denominator as the trial court determined (as supported by the argument of the appellee) or even eliminated from the equation because of the premium nature of the item to this particular company's cost (as advanced as an alternative position by appellee). And these contentions of the parties have been projected in support of or as an attack upon the judgment of the trial court whose decision treated each other item (such as transportation, warehousing, distribution and selling costs, etc.) with particularity and, with some exceptions, allocated a portion of these costs to mining. Since the main opinion with a broad sweep apparently eliminates all these costs and expenses from inclusion within the formula it would serve no present purpose to express my agreement or disagreement with those aspects of the judgment below. It is sufficient to note that neither the United States nor the taxpayer has made any suggestion that consideration of these items is not proper within the bounds of the proportionate profit method. Their disagreement lies with where and how such costs should be placed within the equation. I consider that to be the issue presented to us and inherent in the application of the proportionate profit method. To eliminate all post-manufacturing costs destroys consideration of the representative market or field price of the first marketable product, a prime factor in the application of the equation, and thus seems to me to reject the method itself.

I agree that taxpayer's claim is not barred by limitation.