**MISSISSIPPI VALLEY PORTLAND CEMENT CO., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 3970, 3969 and 3968.**

United States District Court,
S. D. Mississippi,
Jackson Division.

Aug. 16, 1972.

Vardaman S. Dunn, Jackson, Miss., for plaintiff.

Robert E. Hauberg, U. S. Atty., for defendant.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

In the three above numbered causes, plaintiff, a Mississippi corporation, seeks tax refunds paid for five taxable years ending January 31, 1961 through January 31, 1965. Plaintiff operates in two capacities, that of a miner of calcium carbonate rock deposits from its quarries in Mississippi, and as a producer of cement in its cement producing plant located within fifty miles of the quarries. Both parties agree that plaintiff is entitled to compute its depletion deduction under the proportionate profits method (26 U.S.C. § 613) inasmuch as plaintiff is an integrated miner-non-miner with no representative market price in its area for calcium carbonate rocks. By stipulation of the parties filed June 15, 1970, all pertinent facts and computations relating to mineral ore depletion have been agreed on except as to three disputed items, common to each action. The proportionate profits method is illustrated in Internal Revenue Regulations, Section 1.613–3(d) (1) (11) by the following formula:

*"Mining Costs*

Total costs X Gross sales = Gross income from mining." This figure of gross income from mining is then multiplied by the appropriate depletion rate 15%, further limited to 50% of the net income from mining under Section 613, 26 U.S.C. In the application of the proportionate profits formula, plaintiff contends that it should be allowed to deduct certain indirect costs, namely: (1) transportation costs from gross sales and eliminate these costs from the formula, and eliminate (2) selling and marketing costs, and (3) shipping and packaging costs from the total of mining and non-mining costs. Defendant contends that all three items should be included in the formula and allocated to non-mining costs.

The parties have agreed that these issues are submitted to the Court on the aforesaid stipulation, the attached exhibits, briefs and oral argument, all of which the Court has considered.

Plaintiff, in asserting that all three items of cost should be excluded from the formula, relies on a Tenth Circuit decision in United States v. Ideal Basic Industries, Inc., 10th Cir. (1968) 404 F. 2d 122, followed in Portland Cement Co. of Utah v. United States, 10th Cir., 412 F.2d 894. Ideal dealt with costs of (1) processing additives, (2) bags and bagging, (3) bulk loading, (4) operating storage warehouses, distribution terminals, and transportation thereto, and (5) advertising, promoting and selling cement. The cost of processing additives is not involved in the case sub judice; the remaining costs treated in Ideal are roughly equivalent to the costs in issue here. In Ideal, the court found that the cost of bags, bagging and bulk loading should be eliminated from all parts in the formula, finding that they were indirect costs which are not incurred for the benefit of the entire operation and as such cannot be included in taxpayer's computation of gross income from the property at kiln feed. The Court similarly found as to the costs of operation of storage warehouses, distribution terminals and transportation, and the costs of advertising, promotional, and selling, saying that these costs, like bagging, loading and transportation, are all distribution costs to get the finished cement from the point of completed manufacture to the next user. This Court construes Ideal as holding that all these costs are indirect costs, not being directly a part of either the mining costs or non-mining costs of the manufactured cement. This assumes that the first marketable product is bulk cement, before any costs attach of storing, packaging, selling, and transporting, and eliminates these items as they may affect profit. The dissenting opinion in Ideal, and the holdings of other courts disagree.[1] Circuit Judge Lewis, in his dissent in Ideal, said: "Common sense

1. United States v. California Portland Cement Co., 9th Cir., 413 F.2d 161; and Southwestern Portland Cement Co. v. United States, 435 F.2d 504.

dictates that if unproductive costs so corrupt the formula as to patently distort the reality of result such costs should be eliminated from the equation. United States v. Portland Cement Co. of Utah, 10 Cir., 378 F.2d 91, 92–93. But elimination of a specific element of cost must be the exception for the proportionate profit method assumes that every item of cost, directly attributable to mining or not, is incurred for the benefit of the integrated business and must therefore be reflected in both cost and gross sales if the equation is to be acceptable." The subsequent Tenth Circuit decision in Portland Cement Co. of Utah v. United States, supra, relied on by plaintiff, decided in 1969, merely found that since the entry of judgment therein, the Tenth Circuit had decided Ideal, and the case was remanded to comply with the guidelines of Ideal. In a short, separate opinion, Circuit Judge Lewis acknowledged that he recognized Ideal as representing the law of the Tenth Circuit, but stated that he continued to believe that the case was incorrectly decided.

It is stipulated by the parties hereto that for the years involved, the internal revenue agent, in computing plaintiff's depletion deductions, treated all transportation costs as "purchased transportation" and eliminated these costs from gross receipts, as plaintiff contends that he should have. The agent similarly treated sales and marketing costs, and trade discounts, not here involved, eliminating them from the equation as he did transportation costs. He allocated the costs of shipping and packaging to the non-mining category. The government now insists all three items should be included in the formula and allocated to non-mining costs. It is the government's position that no costs can be ignored in applying the proportionate profits method.

1. Transportation Costs

■ It is stipulated that in order to sell its finished cement, plaintiff transported the product to customers by common carrier, and that to maintain a competitive position plaintiff sold cement at competitive prices all over its market area, no matter how many miles it had to deliver the cement. Plaintiff used a delivered pricing system, the costs of transportation not being separately stated on plaintiff's invoices or separately paid for by its customers. Plaintiff kept its own account of transportation costs and treated them as an expense item. Where the taxpayer pays the actual costs of non-mining transportation, that is from the taxpayer's mine or plant to the customer, designated as "purchased transportation," these costs ordinarily may be deducted from gross income, and eliminated from the formula. However, under I.R.S. regulations, Section 1.613–3(e) (2) (iii) "purchased transportation" is defined, as that (a) which is performed in conveyances owned or leased by persons other than taxpayer, (b) which is performed solely to deliver taxpayer's mineral products to the customer, (c) which is charged to the customer in such a way that the taxpayer ordinarily does not earn any profit with respect to such transportation. The regulation further provides that the taxpayer must demonstrate the non-profit character of the transportation services, and further provides that it shall be presumed that these requirements are not met if the taxpayer requires customers to purchase the mineral products on a delivered basis by failing to offer such products for sale on the basis of a price f. o. b. the taxpayer's mine or plant, or by other means. It was stipulated that plaintiff did realize an overall profit on its sales. Inasmuch as plaintiff has failed to demonstrate that transportation was offered on a non-profit basis, the Court finds that plaintiff has failed to comply with the regulations which would otherwise permit transportation costs to be eliminated from gross receipts and accordingly finds that the transportation costs for each of the involved years should have been included in the formula as a part of gross sales and allocated to non-mining costs. The Court notes that the majority opinion in Ideal relied on the rul-

ings in Standard Lime & Cement Co. v. United States, 329 F.2d 939, 165 Ct.Cl. 180, a 1964 decision, issued before the 1968 Regulation cited above.

### 2. Selling and Marketing Costs

Similarly as to transportation costs, the internal revenue agent eliminated plaintiff's sales and marketing expenses and trade discounts from the formula. Trade documents, by stipulation, are not in dispute. Notwithstanding the agent's treatment, agreed to by plaintiff, defendant contends that sales and marketing expenses should be included in the total costs and allocated to non-mining costs. Defendant in its brief recognizes that if the disputed item represents a reduction in the selling price rather than a profit-making item, then gross receipts are reduced by that item. Otherwise any inflation of gross receipts will give the integrated miner-manufacturer a distorted depletion allowance, or an unfair economic advantage over a non-integrated miner. Likewise, to ignore some costs without netting them out of gross receipts inflates the gross receipts and produces a distorted depletion allowance. The government urges that all costs, from mining up to and including the sale of the product, cement in this case, should be included in the formula, including costs of sales and marketing, which in turn should be allocated to non-mining costs, principally because plaintiff failed to prove which portion, if any, is attributable to mining costs as opposed to non-mining costs.

The government points to the stipulated facts that all sales of plaintiff's product, during the tax years involved, were handled by Valley Cement Sales, plaintiff's agent for the purpose of marketing and selling. The agency operated on a cost basis and in return for its services was reimbursed by plaintiff at the rate of 10 cents per barrel, returning to plaintiff at the end of the year, all such sums not expended in marketing and selling. Although United States v. California Portland Cement Co., 9th Cir., 413 F.2d 161, affirmed a ruling that

selling expenses should be allocated pro-rata between mining and non-mining, it is clear in this case that the expenses of market and selling by plaintiff's agent were those of non-mining costs.

### 3. Shipping and Packaging Costs

Shipping and packaging costs are specifically covered in IRS Regulation Section 1.613–3(d) (4) (iii), which provides that costs of bulk packaging and by bags, and storage and warehousing attributable thereto, shall be considered as non-mining costs. Cases have so held. See United States v. California Portland Cement Co., 9th Cir., 413 F.2d 161; and Whitehall Cement Manufacturing Co. v. United States, D.C., 237 F. Supp. 838.

Accordingly, with respect to the three disputed items before the Court, the Court finds that all three are properly includable in the formula as a part of non-mining costs. In view of this finding, and as provided in Paragraph 54 of the Stipulation on file herein, the Court finds that plaintiff is entitled to no recovery as to any of the three suits pending before the Court. An appropriate order may be submitted.