# RIDDELL, DISTRICT DIRECTOR OF INTERNAL REVENUE, *v.* MONOLITH PORTLAND CEMENT CO.

No. 528.   Decided January 14, 1963.

*Solicitor General Cox, Acting Assistant Attorney General Jones, Ralph S. Spritzer* and *Melva M. Graney* for petitioner.

*Joseph T. Enright* and *Norman Elliott* for respondent.

PER CURIAM.

The taxpayer respondent during the taxable year 1952 mined limestone from its own quarry, crushed it, transported the crushed product two miles to its plant, and there, through the addition of other materials and further processing, manufactured the limestone into cement which it sold.   It paid taxes for the year mentioned, based on a depletion allowance computed in accordance with Treas-

ury Regulations. Thereafter taxpayer filed claim for refund and now prosecutes this suit on the ground that the depletion allowance should not have been based upon constructive income at the crushed limestone stage, but rather upon gross receipts from sales of the mining product after its "treatment processes" were completed and it became finished cement.[1] The District Court found that the taxpayer's depletion base was the income from the sale of finished cement, and the Court of Appeals affirmed. 301 F. 2d 488.

Section 23 (m) of the Internal Revenue Code of 1939, 53 Stat. 14, provided that in computing taxable net income certain percentage deductions from gross income should be allowed for depletion of mines. The Congress further provided, § 114 (b)(4) of the Code, as amended, c. 63, § 124 (c)(B), 58 Stat. 45 (1944), that included within the term "mining" were "the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product . . . ."

In *United States* v. *Cannelton Sewer Pipe Co.,* 364 U. S. 76 (1960), we considered at some length the application of this term to the mining industry and held that the statutory percentage depletion allowance on the gross income of an integrated mining operator should be cut off at the point where the mineral first became suitable for industrial use or consumption. After careful study of the record here we believe that this case is controlled by *Cannelton.* We concluded there "that Congress intended to grant miners a depletion allowance based on the constructive income from the raw mineral product, if marketable in that form, and not on the value of the finished

---

[1] There is no question involved here under the Act of September 14, 1960, 74 Stat. 1017, since taxpayer elected to pursue his claim for depletion on the finished cement product rather than accept as a correct cut-off point for depletion the prekiln feed stage of manufacture as permitted by that Act.

articles." 364 U. S., at 86. We found that "the cut-off point where 'gross income from mining' stopped has been the same" ever since the first depletion statute, namely, "where the ordinary miner shipped the product of his mine." *Id.*, at 87. It therefore appears from this record that the "product" with which the Code deals here is the taxpayer's product at the point when "mining" terminated, *i. e.*, when it reached the crushed limestone stage.[2] This results in limiting the taxpayer's basis for depletion to its constructive income from crushed limestone, rather than from finished cement.

The petition for certiorari is therefore granted, the judgment reversed, and the case is remanded for disposition in accordance with this opinion.

*It is so ordered.*

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

---

[2] In this connection crushed limestone was not only "marketable in that form" but, according to the Preprint from Bureau of Mines Minerals Yearbook, 1952, Stone, p. 26, an exhibit in the record, it was actually sold in California in 1952 in an amount exceeding 1,500,000 tons. Sales in the United States for that year exceeded 216,000,000 tons. Both of these figures exclude the tonnage used in the manufacture of cement. A stipulation in the record shows that limestone sold or used for all purposes totaled almost 300,000,000 tons in 1952.