**UNITED STATES of America,**
**Appellant,**

v.

**PORTLAND CEMENT COMPANY OF UTAH, a Utah corporation, Appellee.**

No. 7028.

United States Court of Appeals
Tenth Circuit.

March 5, 1963.

Rehearing Denied April 12, 1963.

Melva M. Graney, Atty., Dept. of Justice (William T. Thurman, U. S. Atty., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Robert L. Waters, Attys., Dept. of Justice, on the brief), for appellant.

Glen E. Fuller, Salt Lake City, Utah (Jack R. Decker, Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON, LEWIS and SETH, Circuit Judges.

BRATTON, Circuit Judge.

Portland Cement Company of Utah, a so-called miner-manufacturer, sought in this action to recover refund of income taxes paid for the years 1954, 1955, and 1956. Legal right to the refund was asserted on the ground that the base for depletion allowance of the taxpayer was sales of finished cement, not a certain kind of limestone. Judgment was entered for the taxpayer. On appeal, the judgment was reversed and the cause was remanded for a new trial. United

States v. Portland Cement Company of Utah, 10 Cir., 293 F.2d 826. The cause was again tried, evidence was adduced, and judgment was again entered for the taxpayer.

The taxpayer mined from its own quarry in Utah a kind of limestone known in the trade as cement rock, and it manufactured cement. The opinion of this court on the former appeal contains in clear detail a statement of the procedures by which such integrated business was conducted. On the second trial, the court found these facts. The taxpayer blasted the rock out of the quarry; reduced it by secondary blasting; crushed it by a gyrating crusher to smaller sizes, plus fines ranging down to splinters; transported the crushed product to the cement plant at which place it was further crushed and ground in ball mills, forming a slurry which was very fine mud; the slurry was placed in tanks where it was mixed and made uniform; after the mixing, the slurry was fed into kilns where it was sintered; the resulting clinker was cooled and later ground into cement; and the cement was stored in silos for future sale. The court further found that these processes were the ordinary treatment processes normally applied by cement rock miners or operators throughout the United States in the production of cement, and that the taxpayer never sold any of the cement rock which it produced or put it to any use other than to make cement. The court further found that the bulk cement sold by the taxpayer was at all times the first and only commercially marketable product obtainable from its cement rock, and that cement was the first and only commercially marketable product obtainable from any cement rock mined anywhere in the United States. And the court concluded in effect that the statutory depletion base of the taxpayer was the income derived from the sale of finished cement.

In presently pertinent part, section 613 of the Internal Revenue Code of 1954, 26 U.S.C. 1958 ed. § 613, provides in effect that in computing net income a spec-ified depletion shall be allowed on limestone and other named minerals; and it defines mining to include the ordinary treatment processes normally applied by mine owners and operators in order to obtain a commercially marketable product or products. Section 114(b)(4)(B) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. 1952 ed. § 114(b)(4)(B) was identical. In United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 80 S.Ct. 1581, 4 L.Ed.2d 1581, the taxpayer owned an underground mine in Indiana from which it produced fire clay and shale. The raw mineral product was transported to the plant of the taxpayer at which it was processed and fabricated into vitrified sewer pipe, flue lining, and related products. In such process, the raw material was ground into a pulverized form about as fine as talcum powder; the powder was mixed with water in a pug mill and became a plastic mass which was formed by machines into the desired shape of the finished ware. The ware was placed in dryers and subjected to heat to remove all of the water; thereafter the ware was vitrified in kilns; and it was cooled, graded and either shipped or stored. During the taxable year in question there were substantial sales of raw fire clay and shale in Indiana, mostly about 140 miles from the mine and plant of the taxpayer. In Kentucky, across the river from the plant of the taxpayer, fire clay and shale of the same grade as that of the taxpayer were mined and sold before, during, and subsequent to the year in question. And in certain subsequent years to that in question, the taxpayer secured all of its mineral requirements from that source on a lease basis under which the lessor mined and delivered the raw material to the plant of the taxpayer. After reviewing the legislative history of depletion allowances, the court said in substance that the value of the taxpayer's vitrified clay products, obtained by expensive manufacturing processes, bore little relation to the value of its minerals; that depletion was not designed to recompense for costs of recovery but for exhaustion of mineral as-

sets alone; that to extend depletion allowance to the finished product of an integrated miner-manufacturer would enable him to enjoy depletion allowance on his manufacturing costs, including depreciation on his manufacturing plant, machinery, and facilities; and that Congress intended integrated mining-manufacturing operations to be treated as though the operator was selling the mineral mined to himself for fabrication. The judgment in favor of the taxpayer was reversed and the cause was remanded for further proceedings in conformity with the opinion.

In point of material facts, Riddell v. Monolith Portland Cement Co., 9 Cir., 301 F.2d 488, reversed 371 U.S. 537, 83 S.Ct. 378, 9 L.Ed.2d 492, and this case parallel each other closely. There the taxpayer owned a quarry in California from which it extracted limestone and used all of such product in the manufacture of cement at its plant located nearby. Small amounts of certain other material which the taxpayer mined and some which it purchased were added to the limestone. The processes in making the cement were those normally applied in the cement industry by cement manufacturers having deposits similar to that of the taxpayer. The trial court found that there was no market for the taxpayer's mineral until such time as it was processed into finished cement. Judgment was entered awarding the taxpayer depletion allowance computed on the income from the sale of finished cement. On appeal, the judgment was affirmed; but on certiorari, it was reversed. Citing United States v. Cannelton Sewer Pipe Co., supra, the Supreme Court said in substance that the property of the taxpayer with which the statute allowing depletion dealt was the mineral product when it reached the crushed limestone stage; and that the taxpayer's allowance for depletion was limited to the constructive income received from such crushed limestone. Here, the basis of depletion of the taxpayer is limited in like manner to the constructive income from the limestone when it reached the crushed stage. It does not include finished cement.

The judgment is reversed and the cause is remanded for further proceedings not in conflict with this opinion.