Winifred Paul AMES, Appellant,

v.

UNITED STATES of America,
Appellee.

Alfred PAUL, Jr., and Virginia Paul,
Appellants,

v.

UNITED STATES of America,
Appellee.

Nos. 18764, 18765.

United States Court of Appeals
Ninth Circuit.

April 13, 1964.

---◇---

William Lee McLane, Jr., Nola McLane, Phoenix, Ariz., and Thaddeus Rojek, Washington, D. C., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, and Michael Mulroney, Attys., Dept. of Justice, Washington, D. C., and Charles A. Muecke, U. S. Atty., Phoenix, Ariz., for appellee.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

These are actions by taxpayers for the refund of federal income taxes alleged to have been erroneously paid for the taxable years 1954, 1955 and 1956. Judgments were entered awarding plaintiffs part of the refunds sought. They appeal.

During the years in question the taxpayers owned and operated the Paul Lime Plant, a partnership, at Paul Spur, Arizona. Their business was the quarrying and processing of calcinable limestone and silica. The principal product of the quarry was crushed limestone between 3⁄8″ and 1½″ in size. The partnership did not sell this limestone but used it in its adjacent plant to make calcined lime, which it then sold.

Under sections 611 and 613 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 611 and 613 (1958), the taxpayers were entitled to a percentage depletion allowance of fifteen per cent of their gross income from mining this limestone.

The method of computing gross income from the mining of crude mineral product is specified in Treasury Regulation 118 (1939 Code), § 39.23(m)-1. Paragraph (e) (3) thereunder provides, among other things, that if the product is processed (as this limestone was processed into calcined lime) before it is sold by the taxpayer, the gross income from the mining of the mineral is to be constructively computed. Under the regulation this is to be accomplished by determining the "representative market or field price" as of the date of the taxpayer's sale of the processed product, of a mineral product of like kind and grade, if there is such a representative market or field price.[1]

The taxpayers and the Commissioner of Internal Revenue were in agreement that the gross income from mining the 3⁄8″ to 1½″ crushed limestone had to be constructively computed in accordance with the formula set out in this Treas-

ury Regulation. They were in disagreement, however, as to the representative market or field price for this product during the years in question. This led to the refund suits now before us on this appeal.

The trial court found that, during the taxable years, there existed in Arizona a representative market price for 3⁄8″ to 1½″ calcinable limestone such as was produced by the Paul Lime Plant of $1.79 per ton. The court therefore concluded that the taxpayers are entitled to have their taxable income for those years recomputed to reflect a depletion allowance deduction calculated upon that representative market price.

The sole question presented on this appeal is whether the trial court erred in finding the representative market price to be $1.79 per ton, rather than $2.50 per ton for 1954, $2.75 per ton for 1955, and $3.00 per ton for 1956, as contended for by the taxpayers.

During the years in issue, Hoopes & Company was a competitor of the taxpayers, with an Arizona plant located 150 miles north of the Paul Lime Plant. On August 21, 1959, the District Director of Internal Revenue for the District of Arizona, issued a thirty-day letter to Hoopes and Company in which, for the purpose of recomputing depletion allowance, the market price of "calcinable limestone materials" was determined to be $2.50 per ton in 1954, $2.75 per ton in 1955, and $3.00 per ton in 1956. Taxpayers contend that these are the figures the district court should have accepted in determining the representative market price of 3⁄8″ to 1½″ crushed limestone mined by them in those years.

However, there was testimony by Joe Aneas, a truck driver, that in each of these years he purchased 3⁄8″ to 1½″ crushed limestone from Hoopes & Company for $2.50 per cubic yard. He also testified that, while he never weighed a cubic yard of such limestone, he thought

---

1. This regulation further provides that if there is no such representative market or field price, the gross income is to be computed by what is commonly called the proportionate profits method.

it weighed "around 2,800 pounds to the yard."[2] This would mean that he paid about $1.79 per ton.[3]

In addition, there was evidence, and the trial court so found, that during the years in question the taxpayers themselves sold substantial quantities of "chat" (¾₆″ to ⅜″ crushed limestone) for prices ranging from $1.74 to $1.97 per ton, and substantial quantities of "flux" (minus ¾₆″ crushed limestone containing some dirt and debris) for prices ranging from $1.10 to $1.14 per ton.

▮ This testimony concerning actual sales by Hoopes & Company, and by the taxpayers provides the basis for the $1.79 per ton figure as found by the court and here defended by the United States.[4]

The taxpayers argue that the testimony of Aneas cannot be regarded as substantial evidence in support of the findings, in view of its asserted nature and quality. They believe that Aneas was uncertain as to what constituted a cubic yard of crushed limestone. Reading his evidence as a whole we do not think this is a necessary conclusion. The taxpayers argue that he testified only as to purchases from Hoopes & Company in 1957, whereas the taxable years in issue were 1954 through 1956. But the statement of the witness, relied upon by the taxpayers, was in effect modified

by his later testimony that he made such purchases in 1952 through 1956.

▮ The taxpayers assert that Aneas had bills and statements in his possession at the trial pertaining to his purchases from Hoopes & Company, but the Government "never offered the items into evidence." The taxpayers, however, had the burden of proof. Roybark v. United States, 9 Cir., 218 F.2d 164, 166. And without regard to the burden of proof, the taxpayers could have put the bills and statements in evidence if it had been in their interests to do so. The same observations are appropriate with regard to the taxpayers' complaint that the Government refused to examine Mr. Hoopes concerning the sale of crushed limestone by Hoopes & Company to Aneas.

▮ The taxpayers' attack upon the testimony of Aneas is also directed to the fact that he had not weighed a cubic yard of ⅜″ to 1½″ crushed limestone, and that his figure of 2,800 pounds was based on his estimate. Here again, however, the taxpayers had it within their power to test that estimate by producing expert testimony as to the weight of a cubic yard of such materials, or by having a cubic yard weighed and the result made known in testimony submitted to the court. The fact that they did not do so may be taken as an indication that it was their judgment at the trial that

2. Asked how he arrived at his estimate of the weight of a cubic yard of ⅜″ to 1½″ crushed limestone, Aneas testified:
"Well, like I say before, I have hauled for Mr. Hagan and we have weighed rock, we have weighed slag and we have weighed sand, and according to the weight the trucks looks, the springs and everything, I'd estimate that it would weigh around 2,800 pounds to the yard."

3. There was also evidence that Hoopes & Company sold crushed limestone to the International Smelting and Refining Company for one dollar per ton with additional per ton charges of fifty cents for trucking and twenty-five cents for loading. The trucker who hauled this limestone testified that some of it was of a size known as "chat" (¾₆″ to ⅜″), and some was a larger size.

4. Evidence was also received concerning the market price of calcinable limestone material in the Sacramento-Placerville region of California, the price ranging from $2.44 to $2.50 for the years in question. Likewise there was evidence covering the market price of such materials in Michigan during 1955 and 1956, the price ranging from $.095 to $1.05 per ton. The trial court found that this evidence was of no weight here because of the remoteness of the sites of such sales from the area of the taxpayers' operations, and differences as to size and quality of the materials involved, and the absence of evidence, regarding comparative shipping costs. In our view the court's findings concerning these California and Michigan sales are not clearly erroneous.

such evidence would not have been helpful.

But perhaps the taxpayers' principal complaint against acceptance of Aneas' testimony is that, whatever its intrinsic worth may be considered independently, it ought not to prevail over the Commissioner's own determination, made in the thirty-day letter of August 21, 1959, that the market price of the Hoopes & Company crushed limestone for the years in issue ranged from $2.50 per ton to $3.00 per ton.

The record does not indicate the basis upon which the Hoopes & Company values were fixed in the thirty-day notice. If it were established in the evidence that this determination was based on actual sales of 3/8″ to 1½″ crushed limestone by Hoopes & Company, or was constructively computed on the basis of the formula set out in the Treasury Regulation referred to above, there would be considerable force in the taxpayers' argument.

In United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 87, 80 S.Ct. 1581, 4 L.Ed.2d 1581, the Supreme Court stated that, in each of the three basic percentage depletion Acts, the Congress indicated that integrated operators should not receive preferred treatment. Consistent with that principle it would seem that, in a Government computation of constructive gross income from mining for the purpose of calculating percentage depletion allowance, one competitor ought not to receive preferred treatment over another similarly situated.

At the time the thirty-day notice was issued to Hoopes & Company, however, there was, to say the least, uncertainty as to whether gross income from mining limestone was, when constructively computed, to be based upon the value of crushed limestone, or upon the value of the product made therefrom. See Riddell v. Monolith Portland Cement Co., 9 Cir., 301 F.2d 488. In its 1963 decision on review of our Monolith opinion, the Supreme Court established the principle, forecast in United States v. Cannelton Sewer Pipe Co., 364 U.S. 76, 80 S.Ct.

1581, 4 L.Ed.2d 1581, that such gross income is to be determined on the basis of the income from crushed limestone rather than the finished product. See Riddell v. Monolith Portland Cement Co., 371 U.S. 537, 83 S.Ct. 378, 9 L.Ed.2d 492.

For all that the record reveals, the uncertainty which prevailed up to then may have been taken into account in the 1959 constructive determination of the 1954 through 1956 gross income from mining for Hoopes & Company. If so, that determination would represent, at least in part, a compromise position, rather than a determination made in accordance with the pertinent Treasury Regulation and the now-controlling Supreme Court decision in Monolith.

Moreover, the fact that the gross income from mining of Hoopes & Company for 1954 through 1956 was constructively computed indicates that the sales which that company made to Aneas in those years was probably not known to the Commissioner in 1959, when the thirty-day letter was sent to that company. If not known to the Commissioner then, but subsequently ascertained, the Commissioner was entitled to use the newly-revealed facts in the subsequent determination involving the taxpayers before us, notwithstanding the existence of competition between them and Hoopes and Company.

Representative market price is a question of fact. See Hugoton Production Co. v. United States, Ct.Cl., 315 F.2d 868, 877. The trial court's finding thereon is not to be set aside unless clearly erroneous and this rule applies not only to the determination of basic facts, but also to factual inferences from undisputed basic facts. Com'r of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Truck Terminals, Inc. v. Com'r, 9 Cir., 314 F.2d 449, 455.

In view of the considerations referred to above, we hold that the trial court did not err in rejecting the determination of gross income from mining set out in the thirty-day letter sent to Hoopes & Company as a basis for the determination to be made here. We further hold

that the trial court did not err in finding that, during the taxable years, there existed for the taxpayers, a representative market price for ⅜″ to 1½″ calcinable limestone such as was produced by the Paul Lime Plant of $1.79 per ton.

Affirmed.