83 A.F.T.R.2d 99-2354, 99-1 USTC P 50,530,
1999 Daily Journal D.A.R. 4423
 BOYD GAMING CORPORATION, f.k.a. The Boyd Group and
Subsidiaries, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
California Hotel & Casino and Subsidiaries, Petitioner-Appellant,
v.
Commissioner of Internal Revenue, Respondent-Appellee.
 Nos. 98-70123, 98-70126.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 11, 1999.
Filed May 12, 1999.
 
 Charles L. Almond and Marie R. Yeates, Vinson & Elkins, Houston, Texas, for the petitioners-appellants.
 Annette M. Wietecha, United States Department of Justice, Tax Division, Washington, D.C., for the respondent-appellee.
 Gregory R. Smith, Irell & Manella, Los Angeles, California, for the amicus curiae.
 Appeals from the United States Tax Court; David Laro, Tax Court Judge, Presiding. Tax Ct. Nos. 3433-95, 3434-95.
 Before: FERNANDEZ and McKEOWN, Circuit Judges, and WEINER,* District Judge.
 McKEOWN, Circuit Judge:
 
 
 1
 This case involves the question whether there really is a "free lunch." In 1986, concerned that the tax laws unfairly allowed high-income taxpayers to structure their business affairs in a manner that generated deductions for personal living expenses, Congress imposed, with certain exceptions, an 80% cap on the amount of deductions for business meals and entertainment.[1] This change, in turn, affected employers who provide "free lunches" to their employees. At issue in this case is whether, under the circumstances here, the employer qualifies for an exception to the 80% cap on deductions associated with "free lunches" furnished to its employees.
 
 
 2
 Petitioners, California Hotel & Casino, Boyd Gaming Corporation, and their subsidiaries (collectively, "Boyd"), are hotel and casino operators that, for reasons of security and logistics, require their employees to stay on the business premises throughout the work shift. As a consequence of the policy, the employees receive free meals at on-site cafeterias. Boyd contends that it is exempt from the 80% cap on deductions because the meals are provided as a "de minimis fringe" benefit. 26 U.S.C. § 274(n)(2); see 26 U.S.C. § 132(e). Boyd argues that the meals at issue meet the statutory test for "de minimis fringe" benefits because they were furnished to "more than half" the employees for the "convenience of the employer." 26 U.S.C. § 132(e); see 26 U.S.C. § 119(a) & (b)(4).
 
 
 3
 The Tax Court rejected Boyd's "convenience of the employer" argument and held that Boyd's deductions for employee meals were limited to 80% of the related expenses under the general rule of section 274(n). Boyd Gaming Corp. v. Commissioner, T.C. Memo. 1997-445 at 3, 79, 74 T.C.M. (CCH) 759 (1997). We disagree. Boyd's "stay-on-premises" requirement rendered the employee meals furnished for the "convenience of the employer," and the meals therefore constituted "de minimis fringe" benefits. We have jurisdiction pursuant to 26 U.S.C. § 7482, and we reverse.
 
 I. BACKGROUND
 A. The "Stay-On-Premises" Policy
 
 4
 During the 1987 and 1988 taxable years, Boyd operated four casino and hotel properties in Las Vegas, Nevada: (i) the Stardust Resort & Casino; (ii) the California Hotel & Casino; (iii) the Fremont Hotel & Casino; and (iv) Sam's Town Hotel & Gambling Hall. These properties are open to the public 24 hours a day, seven days a week. Each property operates an on-site cafeteria facility, separate from the public restaurants, where employees can obtain free meals during their work shifts. In addition, approximately 10% of Boyd's employees (primarily managerial and supervisory personnel) are permitted to eat in the on-site public restaurants at no charge.
 
 
 5
 In a Stipulation of Facts before the Tax Court, the Commissioner of Internal Revenue conceded that Boyd imposed on its employees a "stay-on-premises" requirement, except when overridden by union contract:[2]
 
 
 6
 During the years at issue, petitioners required their employees to stay on the Properties' premises during their entire shift, except where overridden by union contract or absent permission from a supervisor/manager. An employee who left during his or her shift, without authorization, was subject to disciplinary action, up to and including discharge.
 
 
 7
 Boyd offers multiple reasons for imposition of the "stay-on-premises" policy, including addressing security and efficiency concerns,[3] maintaining work force control,[4] handling business emergencies and continuous customer demands, and the impracticality of obtaining meals within a reasonable proximity. In response, the Commissioner argues that the evidence did not support these reasons and, in any event, that there was no business nexus between the "stay-on-premises" requirement and the meals furnished to employees.
 
 
 8
 B. Tax Court's Treatment of Meal Expense Deductions
 
 
 9
 Boyd claims that it is entitled to deduct 100% of the expenses associated with the meals provided to its employees for the 1987 and 1988 taxable years. The Commissioner sent Boyd notices of deficiency resulting from disagreement over the appropriate level of deduction. Boyd petitioned for redetermination of the deficiencies pursuant to 26 U.S.C. § 6213(a).
 
 
 10
 The Tax Court issued two rulings that set the stage for this appeal. Upon cross-motions for partial summary judgment, the Tax Court held that Boyd would qualify for the exception to the 80% cap if it could establish factually that the meals furnished to its employees constituted a "de minimis fringe" benefit. Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 344, 353, 1996 WL 270935 (1996). As a result of this ruling, which has not been appealed, the Tax Court set the case for trial to determine whether Boyd fell within the exception.
 
 
 11
 Following trial, the Tax Court held, pursuant to certain Internal Revenue Service ("IRS") regulations, that Boyd did not furnish meals to "substantially all" of its employees for the "convenience of the employer," and thus, could not deduct more than 80% of the meal expenses. Boyd Gaming, T.C. Memo. 1997-445 at 3, 79. This latter ruling is the subject of this appeal. As discussed below, the landscape for the Tax Court's decision was altered when Congress substituted a statutory threshold of "more than half" for the prior regulatory requirement of "substantially all."
 
 II. STANDARD OF REVIEW
 
 12
 The taxpayer bears the burden of showing entitlement to a particular deduction. Norgaard v. Commissioner, 939 F.2d 874, 877 (9th Cir.1991). The determination that a taxpayer failed to produce sufficient evidence to support a deduction constitutes a factual finding subject to the "clearly erroneous" standard of review. Id.; see also Sacks v. Commissioner, 69 F.3d 982, 986 (9th Cir.1995) ("underlying factual determinations are reviewed for clear error"). Discretionary rulings of the Tax Court are examined under the "abuse of discretion" standard, while conclusions of law are reviewed de novo. Condor Int'l, Inc. v. Commissioner, 78 F.3d 1355, 1358 (9th Cir.1996). The Tax Court's interpretation of the Internal Revenue Code is "entitled to respect because of its special expertise in the field." Pahl v. Commissioner, 150 F.3d 1124, 1127 (9th Cir.1998).
 
 III. ANALYSIS
 
 13
 This case turns on whether Boyd provided the employee meals for its own "convenience." Before analyzing the issue of "convenience," we first outline the statutes that lead to this test of deductibility.
 
 A. The 80% Cap
 
 14
 The "convenience" test, which Boyd must satisfy to be exempt from the 80% cap on food and beverage expenses, stems from the statutory exception to the cap. During the taxable years at issue, 26 U.S.C. § 274(n) limited the amount of a deduction for food or beverages to 80% of the associated expenses. The 80% cap, however, did not apply if the food or beverage expense was "excludable from the gross income of the recipient" under 26 U.S.C. § 132(e). 26 U.S.C. § 274(n)(2). In general, section 132 excludes "de minimis fringe" benefits from an employee's gross income. See 26 U.S.C. § 132(a)(4). Section 132 further defines as a "de minimis fringe" an employer's operation of an eating facility for employees if the facility meets the following criteria:
 
 
 15
 (A) such facility is located on or near the business premises of the employer, and
 
 
 16
 (B) revenue derived from such facility normally equals or exceeds the direct operating costs of such facility.
 
 
 17
 26 U.S.C. § 132(e)(2).
 
 
 18
 Boyd's facilities were located on the business premises and therefore satisfied subsection (A). For the taxable years at issue, however, Boyd did not charge for the meals and hence could not establish by direct evidence that it met the revenue/operating cost test of subsection (B). Thus, Boyd must rely on a statutory presumption, which treats revenue as equal to operating costs for meals furnished to employees who are entitled to exclude the value of the meals from their gross income pursuant to 26 U.S.C. § 119. 26 U.S.C. § 132(e). Under section 119, an employee may exclude meals furnished on the business premises of the employer for the "convenience of the employer." 26 U.S.C. § 119(a). The applicability of the 80% cap therefore turns on whether Boyd provided the meals at issue for its own convenience.
 
 B. For the Convenience of the Employer
 
 19
 The term "convenience of the employer" is not defined by statute. IRS regulations, however, consider meals as furnished for the "convenience of the employer" if they are provided for a "substantial noncompensatory business reason." 26 C.F.R. § 1.119-1(a)(2)(i). The regulations outline a number of circumstances under which meals are treated as furnished for a "substantial noncompensatory business reason."[5] In addition, the regulations define a catch-all provision, which allows an employer to impute a "substantial noncompensatory business reason" for provision of the meals.
 
 
 20
 Two questions arise: What business reasons meet the test and how many employees must be covered? We address the latter issue first because a recent statute provides a conclusive answer.
 
 1. The Catch-All Provision
 
 21
 Before the Tax Court, Boyd sought to invoke the regulatory catch-all provision, which provides:
 
 
 22
 If the employer furnishes meals to employees at a place of business and the reason for furnishing the meals to each of substantially all of the employees who are furnished the meals is a substantial noncompensatory business reason of the employer, the meals furnished to each other employee will also be regarded as furnished for a substantial noncompensatory business reason of the employer.
 
 
 23
 26 C.F.R. § 1.119-1(a)(2)(ii)(e) (emphasis added). IRS regulations provide no precise numerical definition for the term "substantially all." The meaning of the phrase, however, is no longer relevant here. In 1998, Congress adopted a statutory catch-all provision, changing the threshold requirement from "substantially all" to "more than half" of the employees:
 
 
 24
 All meals furnished on the business premises of an employer to such employer's employees shall be treated as furnished for the convenience of the employer if, without regard to this paragraph, more than half of the employees to whom such meals are furnished on such premises are furnished such meals for the convenience of the employer.
 
 
 25
 26 U.S.C. § 119(b)(4) (emphasis added). Section 119(b)(4) was explicitly given retroactive effect. Pub.L. No. 105-206, § 5002(b), 112 Stat. 685, 788 (1998).
 
 
 26
 On appeal, Boyd relies on the more favorable statutory catch-all mechanism. Based just on the parties' stipulations, Boyd comes close, but does not quite trigger the catch-all provision. The Commissioner conceded that, depending on the property, between roughly 41% and 48% of Boyd's employees received meals during the 1987 and 1988 taxable years for the "convenience of the employer." Finding Boyd a few percentage points short of the "more than half" threshold, we must move beyond the stipulations and examine whether Boyd can satisfy the "convenience of the employer" standard for the requisite number of employees.
 
 
 27
 2. Substantial Noncompensatory Business Reasons
 
 
 28
 Boyd argued to the Tax Court that it provided employee meals for one or more of the generally accepted business reasons outlined in the regulations, including employee availability for emergencies, short meal periods, and coverage as a food service employee.[6] See 26 C.F.R. § 1.119-1(a)(2)(ii). Boyd also contended that its "stay-on-premises" policy constituted a "substantial noncompensatory business reason" for furnishing meals. The Tax Court rejected Boyd's arguments. We hold that the Tax Court erred with respect to Boyd's "stay-on-premises" requirement.
 
 
 29
 For guidance, we look to the Supreme Court's decision in Commissioner v. Kowalski, 434 U.S. 77, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977).[7] The Court examined the history of section 119 and concluded that the "convenience of the employer" should be measured according to a "business-necessity" theory. Id. at 93 (citing Van Rosen v. Commissioner, 17 T.C. 834, 838-40, 1951 WL 271 (1951)). Under that theory, the exclusion from gross income applies only when the employee must accept the meals "in order properly to perform his duties." Id. (quoting S.Rep. No. 1622, 83d Cong., 2d Sess. at 190 (1954)). The Tax Court here seized on this language to support its conclusion that "[s]ection 119 requires a closer and better documented connection between the necessities of the employer's business and the furnishing of free meals." T.C. Memo. 1997-445 at 77. We view the Tax Court as both misreading Kowalski and attempting to second guess Boyd's business judgment.
 
 
 30
 Kowalski is consistent with our earlier decision, Caratan v. Commissioner, 442 F.2d 606 (9th Cir.1971), in which we held that the Tax Court may not substitute a business judgment that is contrary to the unimpeached and uncontradicted evidence presented by the taxpayer. Id. at 609-10. While the taxpayer in Caratan offered credible testimony establishing that the farm supervisory personnel at issue needed to be available for duty 24 hours a day and were therefore required to accept lodging on the farm as a condition of employment, the Commissioner put forth no evidence. Id. at 607-10; see also 26 U.S.C. § 119(a)(2) (test for excluding the value of lodging from gross income). We specifically rejected the Tax Court's narrow focus on whether the employees could do their jobs without living on the farm, observing that "if the employee must be available for duty at all times, the lodging is, practically speaking, indispensable to the proper discharge" of the employee's duties. 442 F.2d at 609.
 
 
 31
 We find Caratan analogous to the case now before us. Boyd has adopted a "stay-on-premises" requirement and, as a consequence, furnishes meals to its employees because they cannot leave the casino properties during their shifts.[8] Common sense dictates that once the policy was embraced, the "captive" employees had no choice but to eat on the premises. As with the lodging in Caratan, the furnished meals here were, in effect, "indispensable to the proper discharge" of the employees' duties.
 
 
 32
 Contrary to the Tax Court's conclusion, no nexus other than the "stay-on-premises" policy was required for the meals to satisfy the Kowalski test. Indeed, the Commissioner's argument that the meals must be linked to an employee's specific duties would render the test virtually impossible to satisfy; only restaurant critics and dieticians could meet such a test. The Commissioner's position is also inconsistent with the IRS regulations themselves, which envision that meals furnished to employees who are similarly confined to the business premises during meal times, but for different reasons (i.e., remote location, insufficient eating facilities in the vicinity), are provided for the "convenience of the employer" and satisfy the Kowalski test. See 26 C.F.R. § 1.119-1(a)(2)(ii)(c) & (f)(7). For these purposes, we can discern no logical distinction between workers isolated by geography and those isolated by employer policy.
 
 
 33
 We caution that it would not have been enough for Boyd simply to wave a "magic wand" and say it had a policy in order to be entitled to a deduction. Instead, Boyd was required to and did support its closed campus policy with adequate evidence of legitimate business reasons. While reasonable minds might differ regarding whether a "stay-on-premises" policy is necessary for security and logistics, the fact remains that the casinos here operate under this policy. Given the credible and uncontradicted evidence regarding the reasons underlying the "stay-on-premises" policy, we find it inappropriate to second guess these reasons or to substitute a different business judgment for that of Boyd.
 
 
 34
 As a result of the "stay-on-premises" requirement, "more than half" of Boyd's employees received the free meals for the "convenience of the employer," and thus Boyd is entitled to invoke the catch-all provision of section 119(b)(4). We hold that, for the taxable years at issue, Boyd may deduct 100% of the expenses associated with its employee cafeterias.
 
 
 35
 REVERSED.
 
 
 
 *
 The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 See 26 U.S.C. § 274(n). This section was later amended and currently imposes a 50% cap on meal and entertainment expenses
 
 
 [2]
 Approximately 3% of Boyd's employees were governed by union contracts overriding the requirement
 
 
 [3]
 Boyd describes the casino environment as one in which vast amounts of cash flow in fast-moving transactions and special security precautions are imposed by state regulations. Many of Boyd's employees handle or have easy access to cash and gambling chips. As a result, each property performs special check-out procedures for certain employees before they are permitted to leave the premises. The "stay-on-premises" policy minimizes the number of entries and departures during each work shift, thereby reducing security risks and the costs of security measures
 
 
 [4]
 Boyd contends that the "stay-on-premises" requirement allows it to maintain tight control over its workforce, thereby reducing the chances of employees succumbing to the distractions and temptations of the "festive" Las Vegas atmosphere
 
 
 [5]
 Meals are treated as furnished for a "substantial noncompensatory business reason" when they are provided: (a) "to have the employee available for emergency call during his meal period"; (b) "because ... the employee must be restricted to a short meal period ... and ... could not be expected to eat elsewhere in such a short meal period"; (c) "because the employee could not otherwise secure proper meals ... [f]or example, ... when there are insufficient eating facilities in the vicinity"; or (d) "to a restaurant employee or other food service employee for each meal period in which the employee works ... irrespective of whether the meal is furnished during, immediately before, or immediately after the working hours of the employee." 26 C.F.R. § 1.119-1(a)(2)(ii)(a)-(d)
 
 
 [6]
 Given our disposition, we do not address whether these regulatory presumptions apply. In particular, we decline to decide whether, contrary to the Tax Court's decision, cocktail servers, bartenders, and bar backs should be treated as food service employees under section 1.119-1(a)(2)(ii)(d)
 
 
 [7]
 Boyd disputes the continued viability of the Kowalski decision. In light of our decision, we need not address this issue
 
 
 [8]
 Although the parties stipulated that Boyd imposed a "stay-on-premises" requirement during the taxable years at issue, and that employees who violated this policy were subject to disciplinary action, the Tax Court took an additional step and specifically found that "[n]o employee was disciplined during the subject years for leaving the premises during a break," focusing on an inconclusive statement by a single employee. T.C. Memo. 1997-445 at 42, 71-72. Based on our review of the record, we conclude that the Tax Court seized on rather weak, tangential evidence of non-enforcement and inappropriately ignored the parties' stipulations and other testimony