T.C. Memo. 2017-160

UNITED STATES TAX COURT

MITSUBISHI CEMENT CORPORATION & SUBSIDIARIES, A DELAWARE
CORPORATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7161-16.                    Filed August 21, 2017.

Paul W. Jones, for petitioner.

Michael W. Tan and Aely K. Ullrich, for respondent.

MEMORANDUM OPINION

COHEN, Judge:  Respondent determined deficiencies of $76,580 and

$344,868 in petitioner's Federal income tax for 2011 and 2012, respectively.

Unless otherwise indicated, all section references are to the Internal Revenue Code

(Code) in effect for the tax years in issue.

[*2]   The parties have reached agreements with respect to some of respondent's proposed adjustments to petitioner's taxable income for the tax years in issue.  The sole adjustment still in dispute involves the correct calculation of petitioner's depletion deduction from the mining of calcium carbonates.  The remaining issues for consideration are:  (1) whether the applicable depletion percentage rate for petitioner's mined calcium carbonates should be 15% per section 1.613-2(a)(3), Income Tax Regs., or 14% per section 613(b)(7); (2) whether the costs of certain materials purchased from third parties and mixed with petitioner's calcium carbonates in the process of making finished cement should be included in "mining costs" for purposes of calculating petitioner's "gross income from mining" under the proportionate profits method, or alternatively, whether those costs should be included in "total costs" for purposes of that calculation; and (3) whether "gross sales", as used to calculate "gross income from mining" under the proportionate profits method, should include only actual sales or should include additionally "constructive sales" resulting from applying the average price per ton of finished cement sold to third parties to tons of finished cement sold to related parties.

**[*3]** By agreement of the parties, the first two issues have been submitted on stipulated facts and are addressed in this opinion. The third issue is deferred pending receipt of further evidence by stipulation or by trial.

## Background

All facts are drawn from the parties' stipulation. The stipulated facts and exhibits are incorporated as our findings by this reference.

Petitioner's Business Activity

Petitioner is a Delaware corporation that has its principal place of business in Henderson, Nevada. Petitioner's largest shareholder is Mitsubishi Materials Corp. (MMC) in Japan. MMC owns 67% of petitioner.

Petitioner's primary business activity centers around the production of finished cement at its Cushenberry Cement Plant (Cushenberry) near Victorville, California. Petitioner's first marketable product is finished cement. Most of petitioner's sales are to MCC Development (MCCD) and MCCD subsidiaries. MMC owns 70% of MCCD. MCCD mixes petitioner's finished cement with aggregates and other ingredients to produce ready-mix concrete for the end user.

Calcium Carbonates and Additive Minerals

In the process of producing finished cement, petitioner mines calcium carbonates at Cushenberry. Petitioner purchases other minerals needed for the

[*4] production of finished cement from third parties. Petitioner adds these purchased minerals to its own mined calcium carbonates before introducing the mixture into the preheating tower. The following table shows the costs of the additive minerals that petitioner purchased from third parties during the tax years in issue:

| Additive mineral | 2011 | 2012 |
|---|---|---|
| Iron | $971,834 | $1,113,640 |
| Red bauxite | 2,578,713 | 3,164,248 |
| Kaolin clay | 562,674 | 568,356 |
| Mill scale | 498,352 | 680,824 |
| Total | 4,611,573 | 5,527,068 |

Total Costs, Mining Costs, and Depreciation

For the tax years in issue petitioner incurred the following total costs in connection with its production of finished cement:

| Costs | 2011 | 2012 |
|---|---|---|
| Total direct costs | $57,817,477 | $63,561,773 |
| Direct cost variance | 3,056,320 | 4,766,089 |
| Overhead costs | 6,988,357 | 8,449,084 |

[*5] Out of petitioner's total direct costs for the tax years in issue, it had direct mining costs of $9,467,345 and $10,003,398, respectively.

According to the parties' agreed adjustments to depreciation, petitioner's depreciation expenses (in round numbers) associated with the production of finished cement were:

| Depreciation | 2011 | 2012 |
|---|---|---|
| Mining depreciation | $1,302,997 | $826,479 |
| Nonmining depreciation | (960,855) | 2,348,437 |
| Allocable general depreciation | 453,153 | 380,373 |
| Total | 795,294 | 3,555,289 |

These agreed-upon depreciation expenses reflect adjustments made pursuant to section 481.

Petitioner's Depletion Deduction

Petitioner filed Forms 1120, U.S. Corporation Income Tax Return, for the tax years in issue. For each of the tax years in issue petitioner claimed a deduction for depletion pursuant to section 611 in connection with its mining of calcium carbonates at Cushenberry. For 2011 petitioner claimed a $1,310,242 depletion deduction. For 2012 petitioner claimed a $1,839,662 depletion deduction.

**[*6]** Petitioner determined its depletion deduction using percentage depletion described in section 613 and the regulations thereunder. To determine percentage depletion under section 613, petitioner calculated its gross income from mining using the proportionate profits method of section 1.613-4(d)(4), Income Tax Regs. For both tax years in issue, petitioner determined its depletion deduction using a percentage depletion rate of 15% under section 1.613-2(a)(3), Income Tax Regs.

On December 29, 2015, respondent sent petitioner a notice of deficiency for tax years 2011 and 2012. In the notice respondent disallowed a portion of the depletion deduction that petitioner claimed for each year. In adjusting petitioner's depletion deduction, respondent used a percentage depletion rate of 14% under section 613(b)(7) rather than the 15% rate that petitioner had used. Respondent also contends that in determining its depletion deduction petitioner incorrectly computed its gross income from mining.

Discussion

I.     <u>Petitioner's Depletion Percentage Rate</u>

Section 611(a) provides that in the case of mines there shall be allowed as a deduction in computing taxable income a "reasonable allowance for depletion". Under section 613(a) this allowance is calculated as a specified percentage of "the gross income from the property". "Gross income from the property" in

**[*7]** petitioner's case is defined as "the gross income from mining". Sec.

613(c)(1). Section 613(b) lists applicable percentage depletion rates for specific

classes of minerals, and these rates are applied to the taxpayer's gross income from

mining to determine the depletion allowance. The amount of the depletion

deduction under section 613(a) can be expressed by the following formula:

Gross Income From Mining × Percentage Depletion Rate =
Depletion Deduction

Section 613(b)(7) provides that for "minerals * * * including * * * calcium

carbonates" 14% shall be the percentage applied to the gross income from mining

to determine the depletion deduction. Section 1.613-2(a)(3), Income Tax Regs.,

provides that 15% is the applicable percentage depletion rate for "minerals listed

in this subparagraph", which includes calcium carbonates. Petitioner calculated its

depletion deductions for the tax years in issue using the 15% depletion rate

provided in the regulations.

Petitioner contends that section 1.613-2(a)(3), Income Tax Regs., is "an

agency pronouncement that should be deemed a concession or stipulation" by

respondent. Petitioner cites Rev. Rul. 66-24, 1966-1 C.B. 157, as evidence that

respondent has "valid[ated]" the rate provided in section 1.613-2(a)(3), Income

**[*8]** Tax Regs., although that ruling concerned the application of the regulation to refractory and fire clay, not to calcium carbonates.

Petitioner also makes an argument based on the legislative nature of regulations adopted pursuant to section 611. Petitioner, however, ignores the timing of the regulations in relation to the change in the controlling statute. The final rule under section 1.613-2(a)(3), Income Tax Regs., was adopted in 1960, when the statutory depletion percentage rate for the category of minerals including calcium carbonates was 15%. See sec. 613(b)(6), I.R.C. 1954; T.D. 6446, 1960-1 C.B. 208, 231-232 (promulgating section 1.613-2, Income Tax Regs.). Before 1969 no mineral or category of minerals was subject to a depletion rate of 14% under the Code. The Tax Reform Act of 1969, Pub. L. No. 91-172, sec. 501(a)(7), 83 Stat. at 629, lowered the statutory rate for the category of minerals including calcium carbonates to 14%. Section 1.613-2(a)(3), Income Tax Regs., was, in effect, superseded and made obsolete by the statutory change and cannot be regarded as an implementing regulation.

In any event, an agency's "'interpretation' of the statute cannot supersede the language chosen by Congress." Pac. Gas. & Elec. Co. v. United States, 664 F.2d 1133, 1136 (9th Cir. 1981) (citing Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980)). We will not follow a regulation contrary to "the unambiguously

**[*9]** expressed intent of Congress." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). "If the intent of Congress is clear, that is the end of the matter". Id. at 842. The correct depletion percentage rate for calcium carbonates is the rate specified under section 613(b)(7). We sustain respondent's determination to calculate petitioner's depletion deduction by applying the rate of 14% against petitioner's gross income from mining.

## II.    Petitioner's Gross Income From Mining

Generally, gross income from mining is "that amount of income which is attributable to the extraction of the ores or minerals from the ground and the application of mining processes". Sec. 1.613-4(a), Income Tax Regs. Taxpayers who, in addition to mining activities, conduct nonmining activities with respect to a mineral property (as in the manufacture of finished products) must make an allocation between gross income from the mining activity and gross income from the nonmining activity so that the percentage depletion rate can be applied only to the gross income from mining. Id. Under the general rule that applies in such a situation, gross income from the mining activity is computed on the basis of the representative market or field price of the particular mineral being processed. Id. para. (c). Where a representative market or field price for a particular mineral cannot be ascertained, the proportionate profits method of computing gross

[*10] income from mining shall be used unless permission to use an alternative method of computation is obtained from the Commissioner. Id. para. (d). The parties agree that petitioner's gross income from mining should be computed under the proportionate profits method.

A.    The Proportionate Profits Method

The proportionate profits method is based on a determination of the total mining and nonmining costs incurred by the taxpayer to produce its first marketable product. Monsanto Co. & Subs. v. Commissioner, 86 T.C. 1232, 1243 (1986). Once determined, the ratio of mining costs to total mining and nonmining costs is applied to the total gross income from the taxpayer's combined mining and nonmining activities with respect to the mineral that is the subject of depletion. Sec. 1.613-4(d)(4)(ii), Income Tax Regs. The product therefrom is treated as the gross income from mining against which the depletion percentage rate is applied. Id. The proportionate profits method is premised upon the administratively convenient principle that "each dollar of the total costs paid or incurred to produce, sell, and transport the first marketable product * * * earns the same percentage of profit." Id. subdiv. (i); see N.C. Granite Corp. v. Commissioner, 56 T.C. 1281, 1289 (1971). Section 1.613-4(d)(4)(ii), Income Tax Regs., provides the formula for the proportionate profits method as follows:

**[\*11]** [Mining Costs/Total Costs] × Gross Sales =
Gross Income From Mining

The parties agree that for the purpose of computing petitioner's gross income from mining under the proportionate profits method petitioner's total costs shall be the sum of: total direct costs, direct cost variance, overhead costs, and total depreciation associated with the production of finished cement. Furthermore, the parties agree that total mining costs shall be the sum of: direct mining costs and mining depreciation, plus those portions of direct cost variance, overhead costs, and allocable depreciation that are properly attributable to mining activities. The portions of direct cost variance, overhead costs, and allocable depreciation attributable to mining activities will be determined in each case by multiplying that total cost by a fraction, which is direct mining costs over total direct costs. Petitioner's direct mining costs, and therefore the correct amount of its total mining costs, are at issue.

B.    Petitioner's Costs of Purchasing Additive Minerals

The parties disagree over the proper treatment of petitioner's costs of purchasing minerals from third parties. Petitioner mixed these purchased minerals with its own mined calcium carbonates in the production of finished cement before introducing the mixture into the preheating tower. Petitioner contends that the

[*12] costs of the purchased minerals should be included in its total mining costs as direct mining costs for the tax years in issue.  Respondent contends that the costs of minerals purchased from third parties are nonmining costs and that they should be included as part of petitioner's total costs under the proportionate profits method.

Section 613(c)(2) provides that "'mining' includes not merely the extraction of the ores or minerals from the ground but also the treatment processes considered as mining described in paragraph (4)".  Section 613(c)(4) identifies certain treatment processes for different classes of minerals, which "where applied by the mine owner or operator shall be considered as mining".  The regulations under section 613 refer to these treatment processes as "mining processes" and contemplate that their costs to the taxpayer are includable as mining costs in the calculation of gross income from mining under the proportionate profits method. See sec. 1.613-4(d)(3), (4)(ii), Income Tax Regs.  In the case of calcium carbonates and other minerals when used in making cement, mining processes include "all processes (other than preheating of the kiln feed) applied prior to the introduction of the kiln feed into the kiln, but not including any subsequent process".  Sec. 613(c)(4)(F).  Section 613(c)(5) provides generally that a process

**[\*13]** of blending with other materials shall not be considered mining unless the process is otherwise provided for in paragraph (4).

In all cases, treatment processes "shall be considered as mining processes only to the extent they are applied by a mine owner or operator to the ore or mineral in respect of which he is entitled to a deduction". Sec. 1.613-4(f)(2)(iv), Income Tax Regs. A deduction for depletion with respect to a particular mineral is allowed only to the taxpayer who has an "economic interest" in that mineral "in place", i.e., in its unmined state. Sec. 1.611-1(b)(1), Income Tax Regs.; see also United States v. Swank, 451 U.S. 571, 579 (1981). A taxpayer who purchases a mineral mined or otherwise produced by another may gain some "economic advantage" in the mineral, but he or she has no depletable interest in it. See Riddell v. Cal. Portland Cement Co., 330 F.2d 16, 18-19 (9th Cir. 1964). The regulations concerning the calculation of gross income from mining for percentage depletion specifically provide that "'mining' does not include purchasing minerals from another" and the "application of \* \* \* processes to purchased ores, minerals, or materials does not constitute mining." Sec. 1.613-4(f)(2)(iv), Income Tax Regs. The costs of minerals for which the taxpayer is not entitled to a depletion deduction and the costs of processes applied to such minerals "shall be considered as nonmining costs in determining gross income from mining." Id. para. (d)(3)(ii).

**[\*14]**  When several minerals are mined separately and subsequently mixed together, as in the making of finished cement, "gross income for percentage depletion purposes must of course be computed separately with respect to each component mineral, notwithstanding any such mixing."  Rev. Rul. 290, 1953-2 C.B. 41.  This principle applies irrespective of the kiln-feed "cutoff point" set by section 613(c)(4)(F) for treatment processes considered as mining in the case of calcium carbonates and other minerals used in making cement.  See Cal. Portland Cement Co., 330 F.2d at 18.

Petitioner contends that the minerals it purchases from third parties are "applied" to its own mined calcium carbonates as a "treatment process".  Because the third-party minerals are obtained and blended with the calcium carbonates before the mixture is introduced into the kiln, petitioner argues they are a treatment process that should be considered mining under section 613(c)(4)(F) and their costs should be included in total mining costs under the proportionate profits method.  Petitioner contends that section 613(c)(5) does not preclude the costs of the additive minerals from being treated as mining costs, because their purchase and addition to the calcium carbonates is a treatment process "otherwise provided for" in section 613(c)(4).

**[\*15]**  The only mineral in respect of which petitioner is entitled to a depletion deduction is calcium carbonates. We reject petitioner's characterization of the purchased minerals as a "treatment process" that is "applied" to the calcium carbonates.  The costs that petitioner seeks to include as direct mining costs are the costs of the additive minerals themselves.  Petitioner does not mine or otherwise have an economic interest in these minerals.  The regulations and applicable caselaw hold consistently that the costs of minerals that are "nondepletable" with respect to the taxpayer may not be included as mining costs in calculating the taxpayer's depletion allowance.  Sec. 1.613-4(d)(3)(ii), Income Tax Regs.; see also Whitehall Cement Mfg. Co. v. United States, 369 F.2d 468, 471 (3d Cir. 1966); Cal. Portland Cement Co., 330 F.2d at 18.

Petitioner's focus on when the third-party minerals were added to the calcium carbonates (i.e., before the kiln feed) ignores that it never had a depletable interest in those minerals and that, in any case, depletion allowances must be calculated separately for individual mineral properties combined in a mixture.  On brief petitioner acknowledges that the additive minerals themselves would have been subject to a separate depletion allowance in the hands of another taxpayer. Including the costs of these minerals in petitioner's mining costs increases its own deduction.  Thus the effect of including such costs in petitioner's mining costs

[*16] would be to allow a "double depletion" on the additive minerals. See Cal. Portland Cement Co., 330 F.2d at 18. We agree with other courts that have considered the issue that double depletion "will not do." Id.; see also United States v. Cal. Portland Cement Co., 413 F.2d 161, 166 (9th Cir. 1969). Even if the additive minerals were not the subject of a prior deduction, including their costs in petitioner's mining costs has the overall effect of depleting them as calcium carbonates, which they are not. See Sw. Portland Cement Co. v. United States, 435 F.2d 504, 509 (9th Cir. 1970).

Petitioner argues that if we should conclude that the costs of the additive minerals may not be included in its mining costs, then we should conclude alternatively that they are "nominating costs", as that term appears in section 1.613-4(d)(3)(ii), Income Tax Regs., and on that basis exclude them from the proportionate profits formula entirely. Petitioner has not provided and we have not found any definition of "nominating" within the context of the Code sections dealing with depletion. We agree with respondent that the word "nominating" as it appears in section 1.613-4(d)(3)(ii), Income Tax Regs., is a typographical error. The word "nominating" appears nowhere else in section 1.613-4, Income Tax Regs., and petitioner does not cite any other Code section or regulation where that term is used or defined. Section 1.613-4, Income Tax Regs., addresses at length

**[\*17]** the treatment of "mining" and "nonmining" costs, and from the context of the relevant subparagraph we conclude that "nominating" is simply a misspelling of "nonmining". The word "nonmining" is, in fact, used in section 1.613-4(d)(3)(ii), Income Tax Regs., as that regulation is reproduced in T.D. 7170, 1972-1 C.B. 178, 183.

The costs of the minerals that petitioner purchases from third parties are nonmining costs in respect of petitioner's mined calcium carbonates. The parties have stipulated that these additive minerals are a necessary component of finished cement. Their costs are "paid or incurred to produce * * * [petitioner's] first marketable product". Sec. 1.613-4(d)(4)(ii), Income Tax Regs. The costs of the additive minerals should be included as part of petitioner's total costs in computing its gross income from mining under the proportionate profits method.

Application of the agreed formulas to determine petitioner's gross income from mining for 2011 and 2012 depends on resolution of the third issue in dispute between the parties as identified above. In anticipation of that later resolution,

<u>An appropriate order will be issued</u>.