**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 13 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MITSUBISHI CEMENT CORPORATION & SUBSIDIARIES, A Delaware Corporation, | No.  19-71401 |
| | Tax Ct. No.  7161-16 |
| Petitioner-Appellant, | |
| v. | MEMORANDUM[*] |
| COMMISSIONER OF INTERNAL REVENUE, | |
| Respondent-Appellee. | |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted October 8, 2020
Seattle, Washington

Before:  GILMAN,[**] CALLAHAN, and CHRISTEN, Circuit Judges.

Mitsubishi Cement Corporation & Subsidiaries ("Mitsubishi") appeals the

decision of the United States Tax Court determining that Mitsubishi owed federal

income tax deficiencies in the amounts of $71,026 and $319,868 for the 2011 and

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

2012 tax years, respectively. Mitsubishi contends that the Tax Court erred by not permitting the company to claim a larger deduction for depletion expenses related to its mining of calcium carbonate, which would have reduced its income tax liabilities. We have jurisdiction under 26 U.S.C. § 7482(a), and affirm.

1.     Mitsubishi first argues that the Tax Court should have applied a depletion allowance of 15 percent instead of 14 percent in calculating the amount of its deduction. Despite acknowledging that 26 U.S.C. § 613(b)(7) requires taxpayers taking a depletion deduction for the mining of calcium carbonate to use an allowance of 14 percent, Mitsubishi contends that the court should have applied the 15 percent rate prescribed by 26 C.F.R. § 1.613-2(a)(3). Mitsubishi is wrong. An "agency's 'interpretation of the statute cannot supersede the language chosen by Congress.'" *Pac. Gas & Elec. Co. v. United States*, 664 F.2d 1133, 1136 (9th Cir. 1981) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980)). Here, § 1.613-2(a)(3) sets forth a depletion rate that is directly contradicted by the language of 26 U.S.C. § 613(b)(7), and thus the statute's language controls. The Tax Court correctly applied the statutory depletion allowance of 14 percent.

2.     Mitsubishi next argues that it should have been permitted to include the purchase cost of minerals that it adds to calcium carbonate to make its cement products to its "mining costs" under 26 U.S.C. § 613(c)(4), thereby increasing the amount of its depletion deduction. That section provides that certain "treatment

2

processes" are considered mining costs. 26 U.S.C. § 613(c)(4). "[I]n the case of calcium carbonates . . . when used in making cement" those treatment processes include "all processes (other than preheating of the kiln feed) applied prior to the introduction of the kiln feed into the kiln." *Id.* § 613(c)(4)(F). Mitsubishi argues that the addition of these minerals to the calcium carbonate is a "process" that occurs prior to introducing the concrete mixture into the kiln, and therefore the cost of purchasing those additives constitutes mining costs.

This court has previously considered and rejected this argument on multiple occasions. *Sw. Portland Cement Co. v. United States*, 435 F.2d 504, 509 (9th Cir. 1970); *United States v. Cal. Portland Cement Co.*, 413 F.2d 161, 166–67 (9th Cir. 1969); *Riddell v. Cal. Portland Cement Co.*, 330 F.2d 16, 18 (9th Cir. 1964); *see also* 26 C.F.R. § 1.613-4(f)(2)(iv) ("The term mining does not include purchasing minerals from another."). Mitsubishi provides no reasonable basis on which to distinguish this authority, and therefore its argument fails.

3.      Mitsubishi also argues that both of the Tax Court's alternative holdings rejecting Mitsubishi's proposed calculation of its gross sales should be reversed. The first of these relates to Mitsubishi's attempt to increase the value of its constructive sales (meaning sales to entities that were controlled by the same corporate parent) to reflect the prices that Mitsubishi claims it would have received for its products on the open market. 26 C.F.R. § 1.613-4(d)(4)(v)(a)–(b). To do

3

so, Mitsubishi was required to establish the "representative market or field price" for products "of like kind and grade" as Mitsubishi's cement products. *Id.* § 1.613-4(c)(1). "The taxpayer bears the burden of showing entitlement to a particular deduction," and "[t]he determination that a taxpayer failed to produce sufficient evidence to support a deduction constitutes a factual finding subject to the 'clearly erroneous' standard of review." *Boyd Gaming Corp. v. Comm'r of Internal Revenue*, 177 F.3d 1096, 1098 (9th Cir. 1999) (citation omitted).

Mitsubishi failed to meet that burden. The Tax Court correctly held that Mitsubishi could not simply rely on its own sales to noncontrolled parties to establish a market price during this period; instead, Mitsubishi was also required to show that those sales were "representative" of the market. 26 C.F.R. § 1.613-4(c)(1). The evidence before the Tax Court showed that Mitsubishi sold different types of cement, and that these different types of cement had different qualities, were used for different jobs, and that Mitsubishi tested each of them to make sure that they met their own unique industry standards. The Tax Court found that Mitsubishi did not introduce evidence establishing the market prices of each of those different types of cements, or make a showing that all the different types of cement were "of like kind and grade" as the cement products for which Mitsubishi did introduce evidence. Mitsubishi has failed to demonstrate that the Tax Court's finding was clearly erroneous.

4

Second, Mitsubishi challenges the Tax Court's determination that, even if Mitsubishi had established that the prices that it charged unrelated customers were representative of the market, Mitsubishi was required to reduce those prices to reflect the reality that its purchasers would have been entitled to discounts under 26 C.F.R. § 1.613-4(e). The Tax Court reviewed Mitsubishi's sales data and found that the discounted prices Mitsubishi charged members of its controlled group resembled discounts that unrelated purchasers of similarly large quantities of cement would have received in the market. Mitsubishi fails to demonstrate that the Tax Court's finding on this point was clearly erroneous. Nor is Mitsubishi's argument that the Tax Court was barred from using sales to members of a controlled group for this purpose persuasive. Contrary to Mitsubishi's arguments, Section 1.613-4(e) contains no bar on the use of such data.

**AFFIRMED.**